Lee, J.
That the evidence offered by the defence in this case might be received under the general issue, if itself free from objection, is very clear. It has long been settled that the defendant under this issue may prove that the locus in quo was his own freehold or that of another by whose authority he entered, or that he hath any other title or right to the possession. Diersly and, Nevel's Case, 1 Leon. R. 301; Dodd v. Kyffin, 7 T. R. 354; Garr, &c. v. Fletcher, 2 Stark. R. 71, 3 Eng. C. L. R. 250; Chambers v. Donaldson, 11 East’s R. 65, 72; Argent v. Durrant, 8 T. R. 403, Gilb. Ev. 258.
The objection to the evidence offered, to prove that Cochran was the superintendent of the road referred to, is I think, wholly untenable. In general it is not necessary to prove the written appointments of public officers. That one has acted as such officer and been recognized by the public as such, is sufficient evidence that he had been duly appointed until the contrary appears; nor is it material how the question arises, whether in a civil or a criminal case, nor whether the officer is a party or his official character is involved in-«dentally, unless where, being plaintiff, he unnecessarily avers his title to the office or the mode of his appointment; in which case, perhaps, the proof must sustain the entire averment. McGahey v. Alston, 2 Mees. & Welsb. 206; Berryman v. Wise, 4 T. R. 366; Cannell v. Curtis, 2 Bing. N. C. 228 (29 Eng. C. L. R. 316); The King v. Gordon, 2 Leach’s C. C. 15; 1 Greenl. Ev. § 83, 92, and cases cited in nn. Still stronger is the case where, as in this, the acts and official character were fully recognized by the appointing power.
Nor can the objection to the plat and profile of road offered in evidence be sustained. It is true there was *249 at that time no such precise road known to the law as the “Marland’s Bottom and Lewisburg turnpike,” but it is easy to see how it came to be so designated. By an act passed on the 25th of February 1850, provision was made for constructing what was called the “Huttonsville and Huntersville road.” By this act the Board of public works were directed to have the road constructed, and for that purpose they were to exercise all the powers and be subject to all the restrictions which were given to and imposed upon the board by the act providing for the construction of the Staunton and Parkersburg road, passed March 16, 1888, except as therein otherwise specially directed. By that act the powers, duties and restrictions of the board in relation to the Staunton and Parkersburg road are defined by reference to those given to and imposed upon the president and directors of the Northwestern turnpike road by the act providing for the construction of that road, passed March 19, 1831, except as therein specially directed. By the fourth section of that act it was made the duty of the principal engineer to lay out and locate the road, and to deliver to the clerks of the County courts of the counties through which the same might pass, plats or maps of so much of the road as might be within their respective counties, to be by them recorded; and thereupon the land over which the said road should be located was to become if so facto vested in the commonwealth for the use of the said road. On the 22d of March 1853 an act was passed providing for the extension of the Huttonsville and Huntersville turnpike from Marland’s Bottom in the county of Pocahontas to Lewisburg. In the title to the act the road is described as “ the Huttonsville, Marland’s Bottom and Lewisburg turnpike.” By the second section of the act for the construction of the Huttonsville and Huntersville road the Board of public works was directed to employ a competent engi *250 neer or superintendent who was to perform the duties, enjoined upon the engineer of the Staunton and Parkersburg road, which as we have seen were the same as those enjoined upon the principal engineer by the act for the construction of the Northwestern turnpike. It was proved by the superintendent that the road had been located and the plat and profile offered in evidence made out and returned to the clerk’s office under his authority as superintendent, and the fact reported by him to the board; and the certificate of the clerk shows that it had been received on the 7th of March' 1854 and admitted to record. It of course represented only the Greenbrier portion of the line between Mar-land’s. Bottom and Lewisburg, and it was therefore described for the sake of brevity, perhaps, or because it was popularly so called as “ the Lewisburg and Mar-land’s Bottom turnpike.” That it was so called appears throughout the record, and the plaintiff herself uses that name in speaking of it; and it was after-wards so called in the act of the 26th of February 1856. It was at most a mere misnomer which could mislead no one as the explanation was patent upon the face of the plat when taken in connection with the acts of assembly under which it had been made.
By the “plat of the land” to be occupied by the road required to be returned to the clerk’s office by § 5, of ch. 70, of the Code (p. 349), I understand the same thing that is called a “ plat or map of the road” in section 4th of the act concerning the Northwestern turnpike road, and I regard the profile in this case if not as perfect as it might have been made, yet as substantially complying with the requirement of the act. And having been returned to the clerk’s office by Cochran, the superintendent whose duty from the nature of his office it was to cause the plat and profile to be made and so returned, the authorization of his act is sufficiently implied, and it must be taken to be *251 the act of the board until the contrary is made to appear.
I think these grounds of objection to the profile as evidence were clearly insufficient, and I pass on to consider the effect of the survey and the return of the profile to the clerk’s office in their bearing on the case, in connection with the first instruction asked for by the plaintiff and that which the court gave instead, when it refused it.
It may be inferred from what we see in the record that the Board of public works, under the act of March 22, 1853, had progressed with the work of the road from Marland’s Bottom to Lewisburg and had completed the same as far as a place called Oakland ; that at that point for some cause which it may not be difficult to conjecture, work upon the road had been suspended, and that it was determined to appeal to the public spirit of the people in the section interested for the means of prosecuting this work deemed of public utility, to its completion. For at the next session of the general assembly, an act was passed (Sess. Acts 1855-6, ch. 198, p. 139) providing for the incorporation of a company to be called the “ Oakland and Lewisburg company, for the purpose of continuing the Marland’s Bottom and Lewisburg turnpike from Oakland its then southern terminus to Lewis-burg. By the second section of this act, the company was required to construct the road of the same width and grade as those of the Lewisburg and Marland’s Bottom turnpike, and upon the location determined by the Board of public works, plainly referring to the location which had been made under the act of the 22d of March 1853 for the extension of the Huttonsville and Huntersville road from Marland’s Bottom to Lewisburg. How I can perceive no reason why the legislature might not authorize this company to construct the road upon the ground which had in fact *252 been appropriated for the same road under another name.' By the Code, (ch. 70, § 5, p. 349,) it is pro- ’ vided that upon the return of the plat of the land to be taken for a work of internal improvement to the clerk’s office and when admitted to record, the land so to be occupied, shall ipso facto be vested in the state. Whether the interest so vested is an absolute fee simple or a qualified estate in the nature of a base fee for the use and purposes of the work, I do not deem it very material to enquire, though I incline to think notwithstanding the broad language of the act, it is of the latter character only. Were it an absolute fee simple, there would seem to be no need of the eighth section of the same chapter which provides that any land taken for such work may be used not only therefor but also for any other work of a different kind which the legislature might at a future time direct or authorize. Concede that the state takes only a qualified estate in the land, if the legislature could direct the Board of public works or authorize a company or third persons to construct a work of a different character from that for which the land had been appropriated (as to which or the validity or true construction of the section, I express no opinion) I can perceive no reason why it might not authorize a company to construct and use a work of precisely the same character, in fact the very road intended, upon the land appropriated. How is the land owner injured? If he might complain should his land taken for an ordinary turnpike road, be converted to the construction and working of a totally different kind of improvement, such e. g. as a rail road whereby he would be subjected to the greater inconveniences and the risks to life and property from such a road running through his land, (as to which I express no opinion,) surely he can have no just cause of complaint when the road which is actually to be made and used, is *253 precisely the kind of road for which the lancl^feSp-iSj propriated. Whether it be made by the Boarcl.of public works under the direction of the legislature by a company under its authority, he is incommoded exactly in the same degree and the conveniences and advantages which he derives are precisely the same.
But it is said the enterprise of constructing a road from Marland’s Bottom to Lewisburg was abandoned by the legislature, and that finding it so the plaintiff may for those reasons have failed to file her petition and claim compensation for her land. Where land has been appropriated for a public work and the legislature afterwards by indubitable evidences manifests its intention to abandon the enterprise and the interest of the state, if a qualified estate only, has ceased and determined, I certainly will not undertake to affirm that a company incorporated at a subsequent period to construct such a work could claim to occupy the ground formerly appropriated by the state without making such compensation; but in this case there is no evidence of any such abandonment. That the Board of public works had not been able for whatever cause to complete the road to Lewisburg within one year after the filing of the profile in the clerk’s office was certainly not sufficient to justify her in concluding that the enterprise was abandoned and induce her to forbear preferring her claim for compensation, if she otherwise would have done so within the year. That the enterprise was abandoned after the road had been made as far as Oakland because the work was suspended, whether before or after the expiration of the year and whether because money could not be raised or thfe appropriation had been exhausted, was by no means the necessary nor the proper inference. The Board of public works had not the power to declare the enterprise abandoned and surrender the commonwealth’s interest in the location. The legislature hav *254 ing declared jts purpose to extend the road to Lewis-burg, it would have been more proper to conclude that it would provide the means either by an additional appropriation if the former were exhausted, or as it in fact did at the very next session, by designating another agency to go on and finish the work. And such is the true and proper construction of the act of 1S55-6, and it was I think, plainly intended to authorize this company to occupy the location theretofore made by the Board of public works, and complete the line to Lewisburg.
Whether the plaintiff preferred her claim and obtained compensation for the land occupied by the road after the profile had been filed, we are not informed. If she did prefer it and received such compensation, surely she cannot be entitled to demand it a second time. If because she thought the peculiar benefits which she would derive in respect to the residue of her land would be full compensation and did not care to risk costs in seeking more, or whether with a commendable public spirit she chose to waive her claim, she must after the expiration of the year stand on the same footing as if she had received all that she was entitled to.
I think therefore the court properly refused to give the first instruction .asked for, and that the instruction which it gave in lieu of it was substantially correct. But I think’ it erred in refusing to give the third instruction and in giving that which it did give, instead, understanding both as referring to the peculiar benefits which the party would derive in respect to the residue of her land by the construction of the road on the new location. If the company desired to change thé location and had the right to do so, it was their duty to conform to the provision of the Code, ch. 56, § 21, p. 296. If they failed to do this, and departed from the location, they became trespassers, and when sued, *255 they were not at liberty to fall back upon the provisions of that and other kindred sections and have the damages estimated according to the measure of compensation to the land owner prescribed by them. When off of the location they were mere trespassers, and the damages were to be estimated as in other actions of trespass. For this cause I think the judgment should be reversed and a new trial directed*
Daniel, Moncure and Robertson, Js. concurred in the opinion of Lee, J.
Allen, P. was of opinion that the Lewisburg and Oakland turnpike company were not authorized to occupy the location that had been made by the Board of public works without compensation to the land owners. He concurred in the opinion of Lee, J* on the other points.
Judgment reversed.