## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# EASTERN DIVISION.

---

KNOXVILLE, SEPTEMBER TERM, 1892.

---

KNOX COUNTY *v.* KENNEDY.

(*Knoxville.* October 15, 1892.)

COUNTIES. *Powers of, in construction of turnpikes.*

Counties are authorized to construct turnpikes, and may, by proper proceedings, condemn land for that purpose.

Code construed: §§ 1549, 1550 (M. & V.); §§ 1325, 1326 (T. & S.).

Acts construed: Acts 1883, Ch. 167; Acts 1881, Ch. 118.

---

FROM KNOX.

---

Appeal in error from Circuit Court of Knox County. S. T. LOGAN, J.

WALTER M. COCKE, LINK HOUK, and WASHBURN, TEMPLETON, PICKLE & TURNER for Knox County.

WEBB & McCLUNG and WILLIAMS, HENDERSON & DAVIS for Kennedy.

SNODGRASS, J.   This is a proceeding by the county of Knox in the Circuit Court to condemn land for a turnpike, under § 1326 of the Code. The company claims power to appropriate land to this purpose because it is a corporation and within the meaning of the preceding section (§ 1325).

The language of that section is as follows:

"Any person or corporation *authorized by law* to construct any railroad, turnpike, canal, toll-bridge, road, causeway, or other work of internal improvement to which the like privilege is conceded, may take the real estate of individuals, not exceeding the amount prescribed by law or by the charter under which the person or corporation acts, in the manner and upon the terms herein provided."

It will be observed that this statute only vested authority to take real estate for such purpose in persons or corporations already *"authorized by law"* to construct a turnpike.   As the counties of the State had then no such power, it is clear that the Act never included them, not because they might not have fallen within the meaning of the term "corporations," but because they were not "corporations authorized by law to construct turnpikes."

The question is, Have they been brought within the Act by subsequent legislation?   By the Act of

1881 County Courts were authorized to own and manage turnpike roads. Page 150. This owner-ship was limited to roads conveyed by chartered turnpike companies. It did not authorize the con-struction of a turnpike by a county. But in 1883 an Act was passed for this especial purpose. It is Chapter 167 of Acts of that session, page 216, and entitled "An Act to provide for the *con-struction*, repairing, and buying of turnpike, mac-adamized, and graded gravel roads."

The first section of this Act provides for the election of Turnpike Commissioners; the second for levy of a tax for turnpike purposes. This section, in general terms, directs that "all taxes collected under this Act shall be applied by said Commissioners to the *construction*, repairing, or buying of turnpike, macadamized, or graded gravel roads in the county from which the tax is col-lected.

Succeeding sections, down to No. 7, are devoted to detail of proceedings for collection of tax by Trustee, oath of office, bond, record to be kept, organization and salaries of Commissioners, and are unimportant to quote. The seventh is as fol-lows:

"That said Commissioners shall expend the amount of this fund received from the Trustee in constructing, repairing, or buying turnpike, mac-adamized, or graded gravel roads, first on such roads as in their judgment are the most impor-tant or most traveled highways throughout the

county, or at such places on said highways as may be most conducive to the public good."

The second section had directed, in general terms, the application of the fund to " *construction, repairing,*" etc. Here it was provided that such application should be made *first* " on such roads as in the judgment of the Turnpike Commissioners are the most important or most traveled highways throughout the county, or at such places on said highways as may be most conducive to the public good."

From this it is argued that the power of the county, acting through its Turnpike Commissioners, was limited to constructing of turnpike beds or roads already laid out in the county; and such was defendant's position below, embodied in its demurrer to the petition to condemn, on which demurrer the petition was dismissed.

This is an erroneous view of the law. The Act is to authorize the " construction," and the general direction of application of fund is also for " construction of turnpikes." The language of the section bears, properly, no such construction as contended. In reference to construction, its meaning is that the funds expended by Commissioners in constructing turnpikes shall be first on construction of such roads as, in their judgment, are most important, and not that the funds shall be expended first in constructing a bed on existing roads of most importance, or on most traveled highways.

Knox County *v.* Kennedy.

But if this were not the proper construction of Section 7, and defendant was right in assuming that this section required the Commissioners to apply the turnpike money *first* to the making of turnpike beds on existing roads, it would not affect the general power of the county, through the Commissioners, to apply tax to general construction of turnpikes under Section 2 of the Act already quoted. The seventh section could but be a direction, to control their discretion as to where the fund should be *first* applied.

It would not alter the fact that the power to construct was included in the second section, and that is the point of this inquiry. If the county is now authorized "to construct a turnpike," it has been brought within the terms of § 1325, and this proceeding is proper. Of course, the section quoted, being a general and continuing law, it included corporations, then, or at any time following, within its provisions.

That the counties were authorized to construct turnpikes under the Act of 1883 has been the legislative view of the question since its passage, and the last road Act specially reserved to the County Courts, the power to "build turnpikes," by providing that nothing in the Act should be construed to impair that power. Acts 1891, Sec. 44, p. 16.

The judgment of the Circuit Court dismissing the petition is erroneous, and is reversed, with cost, and the case remanded for further proceedings.