# THE STATE ex rel. HINES, Prosecuting Attorney, v. SCOTT COUNTY MACADAMIZED ROAD COMPANY, Appellant.

### In Banc, November 6, 1907.

1. **APPELLATE JURISDICTION: Constitutional Question: Injunction.** Where defendant in its answer, in an injunction suit to restrain it from collecting tolls over a turnpike road, assails the proceeding on the ground that if permitted it would be a denial of due process of law and the impairment of its contract with the State and a taking of its property without just compensation, and invokes the protection of sections of the Constitution on those subjects, the appeal is to the Supreme Court, for the court, when the appeal is presented, must not only determine whether or not a constitutional question was presented, but if so whether or not there is merit in it, and in such case the appeal is to the Supreme Court.

2. **INJUNCTION: Toll Roads: Expired Charter.** A proceeding by injunction by the prosecuting attorney in the name of the State to restrain a corporation whose charter has expired from further maintaining a public nuisance, is a proper remedy. And by statute (Laws 1901, p. 235) injunction by the prosecuting attorney in the name of the State to restrain a corporation whose charter has expired from charging and taking tolls from travelers upon a public highway, is expressly made the remedy.

3. **CORPORATION: Perpetual Succession.** The legal existence of a corporation whose charter grants it "perpetual succession," is by another section of the charter which continues the privileges granted by the charter to fifty years, limited to fifty years. "Perpetual succession" when used in a corporation's charter mean continued existence during the term limited in the charter, and not eternal existence.

4. **CORPORATION: Toll Road: Expiration of Charter: Right of Grantee.** A corporation organized to maintain a turnpike road and to charge tolls for the use thereof, has no legal right to collect tolls after the expiration of its charter. And as it has no such right it cannot transfer it to another corporation organized for the purpose of taking over all its properties.

5. **———: ———: ———: Appropriation of Road by Public: Compensation.** After the expiration of the company's charter the road, which all along was a public highway, passed to the

State or public, and the enjoining of it and its transferree from further collecting tolls or exercising any control over the road is not depriving it of its property without due process of law or without just compensation, for the right of either a corporation or individual to exact tolls is not a common right and does not exist in the absence of a grant by the Legislature. The grant of the privilege to collect tolls from travelers upon the public highway limited its compensation to its right to collect tolls, and that right having expired the road became a free public highway. Thereafter the public has a right to use the road without paying tolls or compensating the corporation or its stockholders for the expense it incurred in macadamizing or otherwise constructing the turnpike. But the toll gates, toll houses, and other property used by it in collecting tolls, are its own, which the State or county cannot appropriate.

6. ———: **Defunct: Power to Convey.** A corporation whose charter has expired is thereafter incapable of making a conveyance of its franchise and property.

7. ———: **Prior Existence of Road.** If the toll company had only an easement in the public highway, it is immaterial whether or not the county had acquired title thereto by prescription prior to the incorporation of the company. Its easement right having expired, the road remained, as it had been, a public highway.

8. ———: **Injunction: Sufficient Petition.** A petition that charges that a particular road is a public highway, and has been for a named number of years, and that defendant without right or authority maintains on and across said highway at various designated points certain bars and obstructions commonly known as toll gates and prevents the public from making free and proper use of said highway, and that said obstructions constitute a continuing public nuisance, and prays that the same be abated and that the defendant be enjoined from further maintaining the same, states all the facts necessary to be alleged, and is not defective as failing to charge that the road belongs to the public.

9. ———: ———: **Reimbursement.** There is nothing in the act of 1901 or in the general law which requires the public, either county or State, to reimburse the corporation whose charter has expired and by which it was granted the right to construct a turnpike road and to collect tolls from the public, or to pay back to the stockholders the money they had invested in the road, as a prerequisite to the right of the State to enjoin it from further collecting tolls and to prohibit it from interfering

with the free use by the public of the road. Such a case is not one where private property is sought to be taken for a public use without just compensation, for the company at the time it constructed the turnpike turned over to the public the use of the land for a road, and vested in the public an irrevocable easement. Their compensation was the privilege of charging and taking tolls during the life of the company's charter.

10. CONSTITUTIONAL STATUTE: Prior Law. A statute which is declaratory of the law as it had previously existed in the State as declared by the courts is not unconstitutional.

Appeal from St. Francois Circuit Court.—*Hon. Robt. A. Anthony*, Judge.

AFFIRMED.

*M. R. Smith, Giboney Houck* and *R. G. Ranney* for appellant.

(1) Is the proper remedy by injunction in this case? (a) This is a suit by injunction to determine appellant's right to hold or execute a franchise. The laws of the State provide that *quo warranto* is the remedy in such case. R. S. 1899, sec. 4457. (b) The above statute provides an adequate legal remedy and equity will not entertain jurisdiction where there is an adequate remedy at law. Cadwaleder v. Atchison, 1 Mo. 659; Cabanne v. Lisa's Exrs., Id. 683; West v. Wayne, 3 Mo. 16; McPike v. Pew, 48 Mo. 525; Stockton v. Ransom, 60 Mo. 535. (c) Equity has no jurisdiction to adjudicate the right to hold an office, as there is an adequate remedy at law. State ex rel. v. Aloe, 152 Mo. 466. Franchises are in the same class with offices in the above statute, and, therefore, come under the above decision. (d) *Quo warranto* and not injunction is the proper legal remedy to determine the right to an office or franchise if the franchise has expired. State ex rel. Jump v. Road Co., 187 Mo. 439. (2) (a) Defendant contends that its grantor owned in fee the right of way of its road. Secs. 1, 23, 24, p. 231, R. S. 1845;

Black. Com., 479; 5 Thomp. Corp., par. 5791; 2 Preston on Estates, p. 50; 2 Kent's Com., par. 281. (b) Conceding, for sake of the argument, that defendant's grantor did not have the capacity to own in fee its right of way, then it only had an easement in the land through which its road ran for toll road purposes. Therefore, when its charter expired, right of way reverted to the original owners. Blackstone, par. 484; 5 Thompson on Corporations, par. 5627; Williams v. Natural Bridge, 21 Mo. 281; Kellogg v. Malin, 50 Mo. 497; Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co., 82 Mo. 125; Graff v. Bird in Hand Turnpike Co., 5 L. R. A. 661; Fort Wayne Land and Improvement Co. v. Mawnee Avenue Gravel Road Co., 15 L. R. A. 651; Mitchell v. Bourbon County, 76 S. W. 17; 27 Am. and Eng. Ency. Law, 326; Wright v. Carter, 27 N. J. L. 76; Robins v. Boiman, 1 Pick. (Mass.) 122; Road Co. v. Renfroe, 58 Mo. 274. The evidence shows that defendant or its grantor had acquired the right of way by purchase, donation or condemnation over all the land through which its road passes. (3) Did appellant have power to buy road from or consolidate with Cape Girardeau and Scott County Macadamized Road Company? (a) The authority to consolidate is found in section 1221, Revised Statutes 1899. (b) Defendant is a regularly incorporated Missouri corporation and has authority to build and own a toll road. The power to build is the power to buy. 5 Thompson, par. 5941; Branch v. Jessup, 106 U. S. 468; Camden and A. R. v. Mays Landing R. Co., 48 N. J. L. 530; State v. Railroad, 37 Mo. App. 496; Detroit v. Road Co., 5 N. W. 237; Turnpike Co. v. Vivion, 103 Mo. App. 324; Turnpike v. Illinois, 96 U. S. 63. The power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation. Turnpike v. Nelson County, 77 S. W. 337. (4) Can appellant or its grantor be deprived of its property without compensation? The

right to own and hold property is a natural right
of citizens which, when acquired under existing laws,
becomes a vested right and not subject to be defeated
by subsequent legislation. O'Brien v. Ash, 169 Mo. 283;
Gladney v. Sydnor, 172 Mo. 318; Trustees of Dartmouth
College v. Woodward, 4 Wheat. 518.    (5)    Even if it
be true, as relator contends, that the charter of the
Cape Girardeau & Scott County Macadamized Road
Company expired on the 24th of February, 1903, would
that fact impair or destroy its road bed and the ex-
pensive stone structure built thereon; and must they
not be considered property within the meaning of both
the State and Federal Constitutions?    5 Thomp. on
Corp., sec. 6746; 23 Am. and Eng. Ency. Law (2 Ed.),
260, 261; 19 Am. and Eng. Ency. Law (1 Ed.), 285;
Railroad v. Railroad, 2 Gray 35; Railroad v. Casey,
26 Pa. St. 325; Owens v. Smith, 31 Barb. (N. Y.) 641;
Tower v. Hole, 46 Barb. (N. Y.) 361.    On the dissolu-
tion of the company, the property thereof, real and
personal, in equity, went to a trustee, the last board of
directors, to be administered for the benefit of creditors
and stockholders.    R. S. 1899, sec. 976; 1 Cook on Stocks
and Stockholders (3 Ed.), sec. 641; People v. DeGrauw,
133 N. Y. 254; Nicoll v. Railroad, 12 N. Y. 121; Forth-
ingham v. Barney, 6 Hun 366; People v. Road Co., 86
N. Y. 9.    Against no other species of property than a
turnpike road would it be contended for a moment but
that the creditors, and, if none, then the stockholders,
on the expiration of the charter, February 23, 1903,
through trustees would hold the property in the road-
bed to the extent of the difference between what it cost
to construct it with interest thereon, and the profits
realized therefrom by tolls, which conservatively esti-
mated could be not less than $30,000.    Overwhelmingly,
the testimony shows that the stockholders of the old
company have a property interest in the roadbed, that
is worth not less than $30,000.    And it is such property

as the State and Federal Constitutions will protect from confiscation by an act of the Legislature. 1 Cook on Stocks and Stockholders (3 Ed.), sec. 641 and notes; 10 Am. and Eng. Ency. Law (2 Ed.), 292; Clark v. Mitchell, 64 Mo. 578; Davis v. State, 63 Ala. 58; Boggs v. Com., 76 Va. 989; Calhoun v. Fletcher, 63 Ala. 574. The point that the stockholders had never been reimbursed for the cost of building the road was not made in any of these cases, nor that the creditors of the company had an interest in the property, including the roadbed, which equity asserted, irrespective of the statute, vesting in the last board of directors the title to such property.

*T. D. Hines, Robert L. Wilson* and *M. A. Dempsey* for respondent.

(1) Appellant contends that its grantor owned the fee in its right of way. No deed was offered in evidence conveying the fee of any of the right of way to this company. A part was obtained by condemnation proceedings and it is unnecessary to cite ·authorities to show that no fee simple interest could have been acquired by it in such proceedings. The only deed in evidence to this company is that of K. W. and W. L. Killibrew, which expressly creates a reversion in themselves and their heirs. Whatever interest was acquired by this company to other portions of the road was by user and common consent which could only amount, under its charter, to an easement. (2) The next inquiry will be as to the nature of turnpike, gravel or plank roads and in connection therewith the meaning of a public highway. In the examination of cases decided in the various States, it should be borne in mind that the statutes of some States provide for the extension and reorganization of turnpike companies. Some of the cases cited by respondent were based upon these peculiar statutes. The best considered case wherein the general doctrine of public highways and turnpike

companies has been enunciated is that of People ex rel.
v. Virginia Canon Toll Road Company (Col.), 45 Pac.
398; State v. Beck, 81 Ind. 500; Elliott, Roads and
Streets, secs. 69, 70; Thomp. Corp., sec. 5938; People
v. Davidson, 21 Pac. 538; Com. v. Wilkinson, 16 Pick.
175; Craig v. People, 47 Ill. 487; State ex rel. v. Road
Co., 138 Mo. 332. (3) But it is contended by respond-
ent that this action cannot be maintained, because the
expiring of the charter of the original company on
February 24, 1903, could not and did not impair or
destroy the roadbed, and it must be regarded as prop-
erty within the meaning of both the State and Federal
Constitutions, and, therefore, if this action prevails, the
effect will be to take respondent's property without
rendering due compensation therefor. The prior cor-
poration obtained no fee simple title to its right of way.
The only right it had to the right of way was the
franchise of taking tolls, which was not a perpetual
right, but absolutely terminated upon the expiration
of its charter life. Therefore, it had no property rights
in the right of way which it could devolve upon re-
spondent by deed or otherwise. With any tangible
property which may have been owned by the company,
relator does not seek by this action to interfere. (4)
Injunction is a proper remedy. State ex rel. v. Road
Co., 37 Mo. App. 505; Laws 1901, p. 235; State ex rel.
v. Gravel Road Co., 138 Mo. 332; 16 Am. and Eng.
Ency. Law (2 Ed.), 352, 353, 354, 355; Attorney-Gen-
eral v. Jamaica Pond Co., 133 Mass. 363; People ex rel.
v. N. & S. Plank Road Co., 86 N. Y. 1; State ex rel.
v. Gravel Road Co., 116 Mo. App. 175; City of George-
town v. Canal Co., 12 Peters 98; 29 Am. and Eng. Ency.
Law (2 Ed.), sec. 703. It is not necessary to deter-
mine whether or not *quo warranto* would also lie. The
remedies are not inconsistent and serve different pur-
poses.

## IN DIVISION TWO.

GANTT, J.—This is a proceeding *ex-officio* by the prosecuting attorney of Cape Girardeau county to perpetually enjoin the defendant, its officers, agents, servants, successors and assigns from maintaining a public, continuing nuisance by obstructing a public highway in said county, known as the Scott County Road and sometimes as the Rock levee across the Big Swamp from the city of Cape Girardeau to the bluffs in Scott county, by maintaining on and across said highway, toll gates and exacting toll from the public who have occasion to use said highway. The petition alleges that said road is a public highway and has been such for more than thirty years; that the defendant is a corporation organized under the laws of this State, and without authority it maintains on and across said highway at various points, bars and obstructions commonly called toll gates, and that it prevents the public from making free and proper use of such highway and that such toll gates are a continuous public nuisance. By consent of parties, a change of venue was granted to St. Francois county. The defendant then filed an amended answer to plaintiff's petition. This amended answer consists of a general denial and an affirmative defence that no portion of said road was ever a free public highway, and that the public never had any interest in said highway; that said toll gates and tolls collected are authorized by law; that the defendant is a corporation duly organized and as such is authorized to own a turnpike road as above described, and that the portion of this road that passes across the Big Swamp was constructed in the years 1853 and 1855 by its grantor, "The Cape Girardeau and Scott County Macadamized Road Company." That in the years 1872 and 1873, the said last-named company procured its right of way along the north side of said swamp by

condemnation, donation and purchase and finished the
construction of its road to the city of Cape Girardeau;
that said road so constructed to the city of Cape Gir-
ardeau was maintained and kept in repair from the
time of its construction up to the present time by de-
fendant and its grantor; that the same has been used
as a public thoroughfare, travelers thereon paying the
tolls at all these times fixed and exacted; that the ex-
penditures for maintaining said road have about
equalled the receipts from tolls; that dividends to stock-
holders have been very small, not enough to reimburse
them for the outlay for the construction of said road;
that the said Cape Girardeau and Scott County
Macadamized Road Company was created by act of the
Legislature, approved February 24, 1853; that by the
provisions of said act said Macadamized Road Com-
pany was granted the exclusive privilege of construct-
ing a macadamized road across the Big Swamp in the
county of Cape Girardeau, with the privilege of ex-
tending the same to the city of Cape Girardeau, and
that said company should have perpetual succession as
such, and that at any time after the expiration of
twenty years, the counties of Cape Girardeau and
Scott should have the right to purchase said road
for the purpose of making the same a free road, but
that in the event that said sale should be made, the
said counties of Cape Girardeau and Scott should pay
to said company the actual cost of the construction
of the same. That relying upon said act, believing
that the terms and provisions thereof would be up-
held and carried out by the State, said company went
to work as soon as could be done after the passage
of this act, to construct and build, and during the
years 1853, 1854 and 1855, did build and construct
said road and complete the same across the Big Swamp,
in accordance with the requirements of said act, and
afterwards in the year 1873 did extend the said road

to the city of Cape Girardeau; that said road was built by said company at great expense for labor and material, to-wit, thirty thousand dollars; that said company was at all times willing to sell said road to said counties in accordance with requirements of said act, but said counties wholly failed and refused to buy said road. And defendant further alleges that it acquired said road from the said Cape Girardeau and Scott County Macadamized Road Company, by issuing to the stockholders of the said company fifteen thousand dollars of the paid up capital stock of this defendant for said road.

Defendant further answering says that the proceedings of plaintiff under this petition violate sections 4, 15, 21, 30 and 32 of article 2 of the Constitution of the State of Missouri, and section 9, paragraph 3, and section 10, article 1, section 4 of article 4, and the 5th and 14th amendment of the Constitution of the United States, which provides that the private property, to-wit, the property of this defendant, cannot be taken without due compensation and process of law, and defendant pleads said several sections and provisions of the Constitution of the United States and the State of Missouri in bar to the pretended cause of action set up in the petition and proceedings of the plaintiff in this behalf instituted. The defendant for further answer says that it purchased the said road for the sum of fifteen thousand dollars in its full paid up capital stock, which was delivered to the last board of directors and trustees of the Cape Girardeau and Scott County Macadamized Road Company, and defendant avers that under the laws of the State of Missouri, after the expiration of the charter of the Cape Girardeau and Scott County Macadamized Road Company, the last board of directors and trustees of said company had good right to sell and convey the private property and assets belonging to said Cape

Girardeau and Scott County Macadamized Road Company to a new company organized for the purpose of owning said road; and that it was the well-settled policy, established by the laws of this State, to authorize a conveyance of the property belonging to said corporation whose charter had expired to convey its property to a new corporation organized in that behalf. And defendant denies that the stockholders of the said Cape Girardeau and Scott County Macadamized Road Company have ever been reimbursed in full or for any part of the capital invested by it in the construction of the said road, and that under the laws of this State said company was authorized to transfer all the property it owned at the time of the expiration of its charter to another corporation organized to take over and operate the said road, and this defendant avers that for valuable consideration it has acquired the said road and all the assets, land and property of the said company and is now the lawful owner thereof and in lawful possession thereof and has acquired a fee and title in fee simple to the said road and right of way sixty feet wide from the owners of the fee adjacent and bordering upon the said road and that plaintiff has no interest or right to the said road in law or equity. And having fully answered prays that the temporary injunction be dissolved and the defendant be discharged with its costs.

To this answer a reply was filed denying all the new matter set up in the answer and especially pleaded that by the Act of February 24, 1853, the Cape Girardeau and Scott County Macadamized Road Company had authority to build a macadamized road from Cape Girardeau to Scott county and keep the levee aforesaid for a period of fifty years; that said right expired on the 24th of February, 1903, whereupon the said road so constructed by said company was and became a free public highway disburdened of the right of said

Macadamized Road Company to take tolls thereon; that said Macadamized Road Company had no power or authority to acquire any fee simple title whatever, and its only right was to acquire an easement or right of way for the purpose of said road, and that it did not acquire any fee simple title to the roadbed and had no authority to sell to this defendant or any one else its right to take tolls or its roadbed; that the stockholders of the said Macadamized Road Company after the expiration of its charter, in order to deprive the public of its free public highway, organized a new corporation known as the "Scott County Macadamized Road Company," and caused a pretended conveyance to be made by the last board of directors of the old company of the roadway, property and franchises of the said Cape Girardeau and Scott County Macadamized Road Company to this defendant. That the defendant company had no assets; that no money was paid for its capital stock and the whole transaction was a scheme contrived to attempt to perpetuate the wrongful and unlawful claim to take tolls forever over the road aforesaid. And relator avers that the entire road now claimed by the defendant from Cape Girardeau to the north end of the levee across the levee in Scott county was by its construction and opening to the public, dedicated by the company constructing it to the public, and thereby became and was and has ever since been a public highway used by the public at all times subject only to the right of the former company to maintain toll gates up to February, 1903. And that at the expiration of the charter of the said Cape Girardeau and Scott County Macadamized Road Company, all the roadway, rights and franchises of said company vested in the public and said road became a free public highway by operation of law, and the defendant is unlawfully obstructing said highway

by its toll gates to the great injury of the public, and again prays judgment for a perpetual injunction.

Upon the trial the following facts were developed:

By the Act of the Legislature approved February 24, 1853, Laws 1853, p. 337, "The Cape Girardeau and Scott County Macadamized Road Company" with the capital stock of fifteen thousand dollars was created a body politic. The company was given "the exclusive privilege of constructing a macadamized road across the Big Swamp in the counties of Cape Girardeau and Scott, where said swamp commences below the city of Cape Girardeau, and running across said swamp a distance of three or four miles, with the privilege of extending the same to the city of Cape Girardeau."

In the years 1853, 1854 and 1855 the road across the swamp was constructed, toll gates erected and it has been operated as a toll road ever since. In the early seventies the road was extended as contemplated by the act to the city of Cape Girardeau, and this extension also has been operated as a toll road up to the present time. The right of way for a part of the last constructed road was obtained by condemnation proceedings. It does not appear that the Cape Girardeau and Scott County Macadamized Road Company ever obtained any portion of the right of way by any kind of deed of conveyance, except in one instance. By the 8th section the act provides that "the privileges granted in this charter shall continue for fifty years, provided that the county courts of the counties of Cape Girardeau and Scott may at the expiration of twenty years, or any time thereafter, purchase said road at the actual cost of construction, and make it a free road." And by the first section of the act it was provided that said Macadamized Road Company "may and shall have perpetual succession as such, and may make and use a common seal, and the same to alter at pleasure." From the time this turn-

pike road was first constructed it has been used continuously by the public as a thoroughfare and highway, subject only to the right of the said company to take and collect tolls fixed by the 7th section of the said act. On May 26, 1903, the defendant, the Scott County Macadamized Road Company, filed articles of incorporation with the Secretary of State to exist for a period of fifty years. The articles allege: "That the undersigned have formed themselves into a corporation for the purpose of constructing and owning a macadamized and gravel road under article 5, chapter 12, Revised Statutes 1899." The road described in the articles is the same as had recently been operated by the Cape Girardeau and Scott County Macadamized Road Company. On May 27, 1903, a contract was entered into, signed by Louis Houck, president of the Cape Girardeau and Scott County Macadamized Road Company, and Giboney Houck, president of the Scott County Macadamized Road Company, the purpose being to consolidate the two companies under section 1221, Revised Statutes 1899. Since May 27, 1903, the defendant has been operating said toll road and is now engaged in operating same and taking toll from travelers thereon. On May 27, 1903, Louis Houck and others, directors and managers of the Cape Girardeau and Scott County Macadamized Road Company prior to the 24th day of February, 1903, in consideration of one dollar and the issuance to the various stockholders of the Cape Girardeau and Scott County Macadamized Road Company of shares of its capital stock equal to the number of shares held by each of the stockholders of the said Cape Girardeau and Scott County Macadamized Road Company, conveyed to defendant the real estate, property, assets, rights and franchises of the Cape Girardeau and Scott County Macadamized Road Company, including its roadbed and right of way, toll gates, etc. A quitclaim deed from K. H. and W. L.

Killibrew was made to the Cape Girardeau and Scott County Macadamized Road Company, dated June 17, 1892, "to hold for the purpose of operating and owning thereon a macadamized and gravel road forever, either by itself or its successors or assigns, provided however if at any time said gravel road company or its successors or assigns should abandon said gravel road and business of operating and running the gravel road over the said strip of ground, that then the said strip of ground shall revert to the parties of the first part or their assigns." There were also other quit-claim deeds to the defendant covering various other portions of the right of way of said road. There was also much documentary evidence and testimony of witnesses offered on the question as to whether a public highway had existed along the route of the road in question prior to the year 1851. No records were offered showing the establishment of a county road by order of the county court, but the evidence did tend to show that the portion of the road crossing the Big Swamp or what was known as the rock levee was traveled by the public prior to the construction of this toll road.

The circuit court after a full hearing rendered a decree for the plaintiff perpetually enjoining the defendant, its officers, agents, servants, successors and assigns from further maintaining toll gates on and across said road and from in any way interfering with the public in the free use of said highway.

I. At the threshold of the consideration of this appeal, we are met with the suggestion of the plaintiff that this court is without jurisdiction to determine it for the reason that no constitutional question is involved in its determination. It will be observed that the defendant in its answer assails this proceeding on the ground that if permitted it would be a denial of due process of law and an impairing of the obligation of

its contract with the State and a taking of its property without just compensation and pleads the sections of the Constitution which guarantee that immunity. Counsel for plaintiff in urging that this court is without jurisdiction insists that that question cannot arise for the reason that the State is not seeking to recover the toll houses, gates and other personal property of the defendant, but is asking only that its citizens be permitted to travel over the surface of this highway without payment of unlawful toll. It is true that this is the purpose of the action, but it is also true that defendant asserts a fee simple title in the road and at least a right to an easement over it, and that this proceeding would impair the obligation of the contract with the State and of its grantor, which if sustained by this court would necessarily defeat the injunction; and while it may be that upon a full investigation of these questions, the result will be reached that no constitutional right of the defendant has been or will be infringed or impaired by this proceeding or the judgment of the circuit court, we are of the opinion that a constitutional right is sufficiently asserted under all the circumstances to put the jurisdiction in this court instead of the Court of Appeals. If transferred to the Court of Appeals, these same questions would be presented there, and that court must necessarily decide, first, whether a constitutional question was raised, and, second, whether there was merit in it. While we have ruled that we will look sufficiently deep into the record to ascertain whether jurisdiction properly belongs to this court and will not entertain it merely because some section of the Constitution is named, still where the question is mooted and we can see that the constitutional question must be passed upon even though adversely, we think it is our duty to hold jurisdiction of the case, and accordingly we shall dispose of the appeal on its merits in this court.

II. In State ex rel. v. Hannibal & Ralls County Gravel Road Co., 138 Mo. 332, without discussion, a proceeding by injunction to restrain a corporation whose charter had expired from charging and taking tolls upon a public highway, was sustained. After- wards, in State ex rel. v. Gravel Road Company, 187 Mo. 439, the propriety of that ruling was questioned, but as it was ruled in that case that this court had no jurisdiction of the appeal and as a majority of the court did not concur in the views of Judge MAR-SHALL that *quo warranto* was the only remedy for such a wrong, and that as it was a legal remedy injunction would not lie, it cannot be considered that the decision in State ex rel. v. Gravel Road Co., 138 Mo. 332, has been authoritatively disapproved by this court, or either division thereof. After the case of State ex rel. Jump v. Gravel Road Company was transferred by this court to the Court of Appeals, that court, in 116 Mo. App. 175, held that injunction was a proper remedy to prevent a continuing public nuisance and it was proper for the prosecuting attorney of the county to institute such a proceeding *ex officio*. The Court of Appeals, while conceding that the State might have proceeded by *quo warranto* against the corpora- tion to oust it of its charter and franchise, proceeded to take up the question on principle whether injunction could also be resorted to, and reached the conclusion that the great weight of authority in this country, as well as in England, was to the effect that in addition to the remedy at law by *quo warranto,* it is now settled that a court of equity may take jurisdiction in cases of public nuisances upon information filed by the Attor- ney-General or other proper officer authorized to rep- resent the State. Thus in City of Georgetown v. Alex- andria Canal Company, 12 Peters 91, the Supreme Court of the United States sustained the jurisdiction of the court of equity, on the ground that equity can

give more adequate and complete relief than can be obtained at law. In Attorney-General v. Jamaica Pond Aq. Corp., 133 Mass. 1. c. 363, it was said: "The cases are numerous in which it has been held that the Attorney-General may maintain an information in equity to restrain a corporation, exercising the right of eminent domain, . . . from any abuse or perversion of its powers which might create a public nuisance or injuriously affect or endanger the public interests." [Agar v. Regent's Canal Co., Coop. *temp.* Eldon, 77; Attorney-General v. Railroad, 1 Dr. & Sm. 154; Attorney-General v. Railroad, L. R. 3 Ch. App. Cas. 100; Attorney-General v. Railroad, L. R. 11 Ch. D. 449; Attorney-General v. Railroad, 4 DeG. & Sm. 75; Attorney-General v. Cohoes Co., 6 Paige 133; People ex rel. v. Newburgh & S. Plank Road Co., 86 N. Y. 1.] As said by the Court of Appeals, "If the collection of the tolls was a nuisance, maintained in the public highway, then it was the right of the public to have such nuisance abated or restrained forthwith and it was the duty of the State in its sovereign capacity to institute such proceeding in that behalf as would render to its citizens immediate reinstatement of a free and unincumbered highway. A proceeding by *quo warranto* would have been of a tedious nature where the relief sought could only be adjusted upon a final determination of the cause, whereas a proceeding by injunction would afford immediate and adequate relief inasmuch as the restraining order of the court could be had forthwith, and the otherwise constant and recurring nuisance be thereby abated during the pendency of the suit, the ultimate result being the same in either proceeding. And, indeed, the daily practice of unlawfully exacting tolls from those persons using the road was a standing and continuing infringement of their rights, which could be immediately relieved only by the extraordinary process

of injunction, and upon each successive exaction of toll, a right of action arose in favor of the person who was required to pay the same against those persons so unlawfully exacting it, which could be adjusted between the parties only by a multiplicity of suits at law.'' We have no doubt whatever that this proceeding by the prosecuting attorney *ex-officio* to abate this public and continuing nuisance was and is the proper remedy. Since the decision of this court in State ex rel. v. Gravel Road Co., 138 Mo. 332, the Legislature of this State, at the regular session in 1901, enacted a new section to article 5 of chapter 151, Revised Statutes 1899, known as section 9547, which provides: ''The control and management of all graveled or macadamized roads of this State, which may have been originally constructed by any corporation, whether organized under special act of the Legislature or under general law, whose charter life has expired or may hereafter expire, shall immediately pass to and vest in the county court in which such road may be situated, and in all cases where such corporation whose charter life has expired by limitation or otherwise is in the possession of and in control of such roads and is collecting tolls thereon, it shall be the duty of the prosecuting and circuit attorneys of the respective counties or circuits through which such road or roads may run to prosecute suits in the name of the State at the relation of such attorneys to enjoin, restrain and prohibit such corporations from collecting such tolls, and such suits may be prosecuted in the name or names of one or more citizens of such counties or circuits who reside in the vicinity of such roads and travel over the same, and in case the circuit or prosecuting attorneys fail or refuse upon request to prosecute the same, any citizen may in the name of the State at the relation of said citizen prosecute such suits to the same extent and in the same manner as

the circuit or prosecuting attorney could have done.''
[Laws 1901, p. 235.]   It would seem that neither our
learned brother who wrote the opinion in State ex
rel. v. Gravel Road Co., 187 Mo. 439, nor the Court
of Appeals when preparing its opinion in the same
case in the 116 Mo. App. 175, had his or its attention
called to this new act, which evidently was intended
to embody in the statute law of this State the prin-
ciples approved in State ex rel. v. Gravel Road Com-
pany, 138 Mo. 332, and State ex rel. v. Gravel Road
Company, 37 Mo. App. 504.

III.   The defendant insists that the act of Feb-
ruary 24, 1853, incorporating the Cape Girardeau and
Scott County Macadamized Road Company, Laws of
Missouri 1853, page 337, conferred upon it con-
tinuous and uninterrupted succession and that the
charter of the said company did not expire on Feb-
ruary 24, 1903, by limitation, or in other words, at
the end of the fifty years prescribed by the 8th section
of said act, for its existence.   The learned counsel con-
cedes that this court, in State ex rel. v. Payne, 129 Mo.
468, settled the law adversely to its contention, and
that that case was followed and approved in State
ex rel. v. Gravel Road Company, 138 Mo. 332, in which
cases it was held that the words ''perpetual succes-
sion'' implied nothing more than a continuous succes-
sion during the existence of the corporation as is
fixed by its charter.   But we are asked by the learned
counsel to review those decisions and to hold that, not-
withstanding the limitation in the act for the exercise
of the privileges conferred, the words ''perpetual suc-
cession'' created a perpetual charter in the Cape Gir-
ardeau and Scott County Macadamized Road Company.
We have read with interest the argument of the
learned counsel, and the authorities to which they refer,
but have not been convinced that our previous rulings
in the cases just cited were incorrect; on the contrary,

we are more than ever satisfied with the absolute sound-
ness of the conclusions reached in those decisions upon
this point and that they correctly overruled Fairchild
v. Masonic Hall Association, 71 Mo. 526. Chancellor
Kent in 2 Kent's Com. (14 Ed.), 267, long ago an-
nounced the true meaning of the words perpetual suc-
cession in corporate charters, wherein he says: "It is
sometimes said that a corporation is an immortal as
well as an invisible and intangible being. But the im-
mortality of a corporation means only its capacity to
take in perpetual succession so long as the corpora-
tion exists. It is so far from being immortal that it
is well known that most of the private corporations
recently created by statute are limited in duration to
a few years." In 7 Am. and Eng. Ency. Law (2 Ed.),
684, it is well said: "When it is said that one of the
distinguishing features of a corporation is the capacity
of perpetual succession, this must be understood to
mean a potential, not an actual perpetuity; a capacity,
as contradistinguished from partnerships and other
voluntary associations, to continue in existence indef-
initely, up to the period of its constitutional or sta-
tutory limitation, in spite of the withdrawal or death
of any of its members." And in 10 Ency. Law and
Procedure, page 148, it is laid down that these words,
"perpetual succession," "mean in a general sense that
the corporation is endowed with the faculty of existing
forever unless the same or another statute or the Con-
stitution has fixed and limited the term of its exist-
ence. In other words, the terms 'perpetual succes-
sion' are understood to mean indefiniteness of dura-
tion, and do not refer to length of time, but rather con-
vey the idea of regularity or unbroken continuity of ex-
istence." [See, also, Field on Corporations, sec. 57;
Ang. & Ames on Corporations, sec. 8.] So that it must
be held that by the limitation in the 8th section of the
act incorporating the Cape Girardeau and Scott County

Macadamized Road Company, the charter of that road expired on the 24th of February, 1903.

IV.  But it is insisted that notwithstanding the charter of the Cape Girardeau and Scott county Macadamized Road Company expired on the 24th of February, 1903, that fact did not and could not impair or destroy the title of the said corporation in the said macadamized road and it must be regarded as property within the meaning of both the State and the Federal constitutions, and that the last board of directors of said corporation as trustee for the said corporation had the capacity and power to convey the same to the defendant herein or to consolidate with the defendant herein and thereby transfer the title for the road to the present defendant company, which is incorporated to build and own a toll road.  And that this proceeding seeks to deprive the defendant of its property in said road, which it acquired from said defunct corporation, without due process of law and without compensation.

To rid this question of all confusion, it may be well to remark that by this proceeding the State does not claim or seek to recover by this action the toll houses, gates or other personal property of the appellant, but seeks only to restrain and prohibit the defendant from longer obstructing this road, which the State insists became on the 24th of February, 1903, a free public highway disburdened of the public and continuing nuisance of toll gates across the same and the exaction of illegal tolls by the defendant, its agents, servants and employees.  And thus we are brought to the real contention in this case, to-wit, what was the character of the rights acquired by the Cape Girardeau and Scott County Macadamized Road Company under its charter of 1853.   By reference to the act itself, it will be seen that this corporation was created for a public purpose, to-wit, that of constructing a macadamized road across the Big Swamp in the counties of Cape Girardeau and

Scott, with the privilege of extending the same to the city of Cape Girardeau, with the privilege of taking tolls from all persons who should travel thereon and to enforce the collection of the same by erecting gates or turnpikes to obstruct the passage over said road until the tolls fixed by the act were paid. And the right to exercise this privilege was expressly limited to fifty years. No power was granted to said corporation to obtain a fee simple title to the land over which said road should be constructed. The only right granted to it was to obtain an easement or right of way for its said proposed road. The nature and character of turnpike roads was fully examined in State ex rel. v. Gravel Road Company, 138 Mo. 332. It was there said: "Now, a turnpike is a highway differing neither in the responsibility for its proper maintenance nor in any other particular from an ordinary highway, save in the mode of constructing and maintaining it. An ordinary public road is maintained and repaired by taxes; a turnpike is supported and maintained by the tolls exacted. A turnpike is regarded in law as a public easement and not as private property. Every traveler has the same right to use it, paying the toll established by law, as he would have to use any other highway. These principles are well established. [Com. v. Wilkinson, 16 Pick. 175; Craig v. People ex rel., 47 Ill. 487.] The public character of the easement is made more manifest when the charter of such companies permits the condemnation of real estate in acquiring their right of way as was granted by the act of 1851, section 8, page 261. [Knox Co. v. Kennedy, 92 Tenn. 1.] And as if to emphasize this view it has often been ruled that when the charter permitted the use of an established highway for a turnpike it imposed no additional burden upon the adjoining landowners by changing the highway into a toll road, on the principle that the character of the easement was not chang-

ed, the road remaining a public highway. [Carter v. Clark, 89 Ind. 238; Chagrin Falls & Cleveland Plank Road v. Cane, 2 Ohio St. 419; Panton Pike Co. v. Bishop, 11 Vt. 198; Callison v. Hedrick, 15 Gratt. 244; Douglass v. Boonsborough Turnpike Road Co., 22 Md. 219; Wright v. Carter, 27 N. J. L. 76; Walker v. Caywood, 31 N. Y. 51.]'' And in that same case, the question now presented arose and was determined, and it was said: ''Having reached this point [to-wit, the date on which the charter rights of the company expired] we are confronted with the question, what becomes of the turnpike or plank road after the franchise expires? We think that the weight of authority and sound reason concur in holding that upon the termination of the franchise the road remains as before a public highway, wholly free from the burden of tolls. Particularly is this true when, as under our statute, the turnpike company merely acquires an easement in the road during its charter life, and not a fee in the land on which the road is laid out. The easement in a turnpike as well as in an ordinary road is vested in the public and when the turnpike company's charter expires, its easement ceases, but the easement of the public continues until revoked by law. [State v. Maine, 27 Conn. 641.] In Railroad v. Com. ex rel., 104 Pa. St. 583, the Supreme Court of Pennsylvania states the law in these words: 'The question is, did the forfeiture of the charter of the turnpike company wholly destroy the character of the road as a public highway? The right of the company to take tolls was ended. Its liability to keep the road in repair was terminated, yet the road as a public highway remained. No judgment or decree had destroyed its character as such. It had been dedicated to public use. The forfeiture of the charter of the turnpike company destroyed the rights of that corporation; yet the road still remained, in fact and in law, a public highway.' [Craig v. People ex rel., 47 Ill. 495.] And

in McMullin v. Leitch, 83 Cal. 239, it was held that the road becomes a public highway by dedication at the time of its construction subject to the right of the company to collect the tolls for the period prescribed by statute, and at the termination of such period neither the company nor stockholders have any interest in the road for which they are entitled to compensation. [27 Am. & Eng. Ency. Law, 324, et seq.]''

In addition to the authorities above quoted the learned circuit Judge who tried this cause has added others, among which is Virginia Canon Toll Road Co. v. People ex rel., 45 Pac. 398, 22 Colo. 429. In that case a company was formed in 1865 for the purpose of establishing a toll road. The company's existence was for a term of twenty years. In 1881 the respondent company was formed for the purpose of acquiring and did acquire as far as they could be alienated, all the rights, property and franchises of said first company. This action was brought in 1896, to exclude the respondent from its assumed franchise to collect tolls, and that the corporation be dissolved. A demurrer to the petition was overruled, which action of the lower court was sustained by the Supreme Court. The court, through CAMPBELL, J., among other things, says: ''A toll road is a public highway, differing from ordinary public highways chiefly in this, that the cost of its construction in the first instance is borne by individuals, or by a corporation, having authority from the State to build it and further in the right of the public to use the road after its completion, subject only to the payment of toll. The acceptance by the corporation of the franchise to construct the road and the operation thereof constitutes a dedication of the same as a public highway. The right of a corporation, or of an individual, to exact tolls is not of common right, and, in this country, does not exist in the absence of a grant from the Legislature. This power of collect-

ing tolls is a part of the sovereign power of the State, which the Legislature may delegate in return for a supposed public good, and the grant of the power may be conferred with any restrictions which the Legislature may see fit to impose, and the grantee takes subject to all such limitations, and the grant of the right is the equivalent of, or compensation for, the cost of building and maintaining the road. . . . . But if we assume that the Wagon Road Company might alien its franchises to collect tolls, and that the defendant Toll Road Company now has, by purchase, all the tangible property of the former company, and also the franchise to exact tolls which its grantor possessed, it must logically follow that, as the result of such acquisition, the grantee company has only the same powers which its grantor had, and no different or enlarged powers. In other words, whatever limitations or burdens existed against the grantor, still exist as against the grantee. The inquiry then is, what is the extent of the powers of the Wagon Road Company? Under the territorial act of incorporation the Wagon Road Company's existence as a corporation expired in 1885. It was then legally dissolved as a corporation, and was thereafter incapable of exercising its franchise to collect toll. Neither could it, by a conveyance made during its incorporate life, impart to any other corporation, or to a natural person, the power to continue the exercise of its corporate franchise after that franchise itself expired by limitation of law. The limitation in the general incorporation act of the territory of twenty years as the term of existence of the company operates in the same way as though by express words the exercise of the power to collect tolls was limited to twenty years. [Elliot, Roads & S., 83; 27 Am. & Eng. Ency. Law 324, et seq.] But plaintiff in error insists that its property is valuable only in case it has the right to collect tolls; and, therefore,

that such use of its property is, of itself, a property right, and unless there is some way whereby it can enjoy this use of its property after its corporate life has ended, practically it is deprived of its property without due process of law. The argument proceeds upon a false premise. In the eye of the law, the toll road was dedicated by its owner as a public highway. While in one case (People ex rel. v. Newburgh & S. Plank Road Company, 87 N. Y. 1) it was held that if a private corporation owns the fee on which the way exists, the public does not acquire the right to use the way upon the expiration of the charter (which decision has been said to be contrary to the weight of authority— Elliot, Roads & S., 54), yet where the corporation has only an easement, as is the case here, and not the fee, the authorities are unanimous that upon the expiration of the charter the way becomes a public highway. [27 Am. & Eng. Ency. Law, supra, and cases cited.] . . . . The easement in, or the right to pass over, the roadway which the corporation laid out, belongs to the public, subject to the necessity of paying tolls only for such length of time as the corporation exists. The contract between the State and the corporation contained in the charter, or resulting from the act of incorporation under the general laws, is that the corporation shall possess during its corporate life the power of collecting tolls, which is regarded as a compensation, and a full equivalent, for the cost of construction and operating the road. The corporation accepts the grant subject to this condition, and supposing, at least, that the business will prove remunerative. This right to collect tolls, not belonging to the corporation either as a matter of common right, or for an indefinite time, as a grant from the Legislature, but for such length of time as the corporation itself is permitted to do business, remains the property of the company only

until the dissolution or the expiration of its charter, and, after that, is neither the property of the corporation nor of its stockholders, but reverts to the State. This property does not, therefore, like the tangible property of a corporation, pass to its stockholders, subject to the rights of creditors, for the obvious reason that the franchise as originally granted was limited to twenty years. It is no answer to this proposition to say that the corporation is deprived of that which is valuable, for the corporation is deprived only of that which, by implication, it agreed to relinquish upon the termination of its corporate existence. If the rule were otherwise the result would be that a toll road company which, under our statute, is limited to twenty years, might indefinitely prolong its existence and perpetuate its franchise, contrary to the express provision of section 11 of article 2 of our Bill of Rights, which prohibits the irrevocable grant of franchises by the General Assembly. [See sec. 15, art. 2, Constitution of Missouri]; for just before the termination of its corporate existence, its stockholders could [as was attempted to be done here] form a new corporation, to which the property and franchise of the old one would be transferred, and the business continued, and when this second corporation was about to expire, a third one could, in like manner, be formed, and so on for all time; and thus indirectly the legislative will could be thwarted, and the Constitution with impunity evaded, and the perpetuation of franchises be accomplished, and a monopoly established, contrary to the letter and spirit of our law. The authorities, so far as called to our attention or as we have examined them, are in harmony with this conclusion. In addition to those already cited, they are: Turnpike Co. v. Ills., 96 U. S. 63; State ex rel. v. Lake, 8 Nev. 276; Blood v.

Woods, 95 Cal. 78, 30 Pac. 129; Thompson on Corporations, sec. 5938; State ex rel. v. Lawrence Bridge Company, 22 Kan. 438."

The learned counsel for the defendant in this case has with much industry distinguished the facts in the Ralls County Case, 138 Mo. 332, from those in the case at bar, one of which is that in that case the turnpike was constructed originally on a previously established public highway by and with the consent of the county court. But the conclusion reached by this court in that case was not based upon the exceptional facts therein, but upon the general law applicable in this case, as in that of any other case in which the turnpike company is incorporated with the right to take tolls for a limited period, and when such charter right expires, the highway becomes disburdened of tolls and is a free public highway thereafter. And by such conclusion, in no manner, as said in the Colorado Case from which we have quoted so freely, no property right of the company is taken for which it is entitled to compensation. In view of the well-settled law on this subject, it must be held that the contract of the State with the Cape Girardeau and Scott County Macadamized Road Company terminated on February 24, 1903, and the road constructed by it on that day ceased to be a toll road, but its character as a public highway remained, and the public is now entitled and was on that date entitled to its free use without the payment of tolls. And it follows as a necessary corollary that on May 27, 1903, the said Cape Girardeau and Scott County Macadamized Road Company had no right, title or interest in said public highway other than its toll gates, houses and personal property which it could convey to the present defendant, the Scott County Macadamized Road Company, and nothing passed by the attempted transfer between the said companies. It is too well settled to admit of discussion that the

first company only obtained an easement over the said right of way and not a fee simple title to the land. [Venable v. Railroad, 112 Mo. 103; State ex rel. v. Gravel Road Co., 138 Mo. 345, 346; Kellogg v. Malin, 50 Mo. 499; Chouteau v. Railroad, 122 Mo. 385.] And moreover there was no such corporation as the Cape Girardeau and Scott County Macadamized Road Company in existence at that date capable of making a conveyance of such right of way. [Bradley v. Reppell, 133 Mo. 545.] And for a further reason that before said attempted conveyance was executed, the franchise and roadbed which the deed purported to pass had already vested in the public free from any power of said defunct corporation to effect a transfer thereof.

Learned counsel in the briefs have assailed the constitutionality of the act of April 3, 1901, but as that act is simply declaratory of the law as had already been decided by this court, we are not impressed with any of the objections alleged against its validity.

Much of the brief of the counsel for the defendant is devoted to the evidence for the purpose of showing that Cape Girardeau and Scott counties had no title by prescription to the highway prior to the incorporation of the Cape Girardeau and Scott County Macadamized Road Company, but according to the views already expressed that was a matter of indifference.

The petition in the case is also assailed on several grounds, one is that it does not charge that this particular road belonged to the public, but a reference to the petition will show that it defines this particular road as a public highway, and then alleges that it is now and has been a public highway for more than thirty years, and that the defendant without right or authority maintains on and across said highway at various points designated therein certain bars and ob-

structions commonly known as toll gates and prevents the public from making free and proper use of said highway, and that said obstructions constitute a continuous public nuisance, and prays that the same be abated and the defendants enjoined from further maintaining the same.  This is a clear and concise statement of all the facts necessary to be alleged.

Another objection to the petition is that it fails to charge that the stockholders had ever been reimbursed or that the public or any one else had ever offered to pay them back the money they had invested in the road. A complete answer to this is that there is nothing in the act or in the general law which imposes any such obligation upon the public.  In People v. Davidson, 79 Cal. 166, 21 Pac. 538, it was said, quoting from Craig v. People ex rel., 47 Ill. 487: "It is claimed for appellant that before his road can be declared a free public highway, he must be paid an equitable sum for his interest in it.  But by his own acts, and presumedly with full knowledge of the law, appellant turned over to the public the use of his land for a road, and vested in the public an irrevocable easement.  It is not a case, therefore, where private property is sought to be taken for public use without just compensation.  In some of the states, compensation is made to toll-road owners at the expiration of their charters, but in those states it is expressly provided by law that such compensation shall be made."  No such provision is made by law in this State.  And the theory of our law is that the original incorporators unquestionably estimate  that the privilege of collecting tolls for fifty years would fully compensate them for their investment in the construction of the road; whether or not their expectations will be or have been realized does not concern the State or its officers.

The conclusion of the whole matter is that the judgment of the circuit court in granting a perpetual

injunction against the obstruction of this highway was proper, and it is affirmed.

*Fox, P. J.,* and *Burgess, J.* concur.

## IN BANC.

PER CURIAM—Upon a rehearing of this cause by the Court in Banc, the foregoing opinion of *Gantt, C. J.,* in Division No. 2, is adopted, *Burgess, Valliant, Fox, Lamm, Graves* and *Woodson, JJ.,* concurring therein.