# I. V. MOXLEY, Appellant, v. PIKE COUNTY.

### Division One, December 30, 1918.

1. NEGLIGENCE: Liability of County. Political *quasi*-corporations, such as counties, townships and school districts, are immune from common-law liability for the negligence of their officers in the exercise of their territorial governmental duties.

2. ————: Municipal Corporation. On the other hand, municipal corporations, such as cities, towns and villages, are liable in damages for personal injuries resulting from negligence in the control, management and maintenance of their streets, alleys and public places.

3. ————: Foundation for Difference. The foundation for the distinction which exists between governmental agencies (such as counties) and municipal corporations (such as cities) with respect to their liability for the negligence of their officers and agents in the construction and maintenance of the class of im-

276 Mo.—29

provements upon which their development and the peculiar value of their immovable property stand, is laid wide and deep in the personal interests of private citizens which mark the first steps in the creation of municipal corporations.

4. ————: **Toll Road: Managed By County.** The county court, in taking over a toll road, which after the expiration of the charter of the corporation which constructed it was by the Legislature placed under the "control and management of the court, and in thereafter maintaining toll gates thereon and in collecting tolls from travelers to provide a fund for its maintenance, was acting in the capacity of agent for the State, and the county is not liable in damages for personal injuries to a traveler thereon whose automobile in the night time ran over the bank and into the bed of a stream from which the bridge had been removed and the place left unguarded.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*Pearson & Pearson* and *D. A. Ball* for appellants.

(1) The demurrer filed by defendant should have been overruled. Harmon v. County of St. Louis, 62 Mo. 313. (2) The defendant was not engaged in the discharge of duties imposed alike by general law on all counties in the State, but it was engaged in the discharge of a self imposed duty, not enjoined by any law. The defendant could not have been compelled, by law, to take the road and operate and maintain it as a toll road. Therefore, the defendant in operating the road as a toll road must occupy the same attitude as would a private individual, or corporation. Laws 1899, p. 345-6; Harmon v. St. Louis County, 62 Mo. 313; Gamble v. Vanderbilt University, 200 S. W. 510. (3) In operating the road as a toll road the defendant was acting in a corporate or business capacity, and not in a performance of a governmental duty. Williams v. Kansas City, 177 S. W. 783; Henderson v. Kansas City, 177 Mo. 477; Dammorn v. St. Louis, 152 Mo. 186; Thurston v. St. Joseph, 51 Mo. 510; Bullmaster v. St. Joseph, 70 Mo. App. 60; State ex rel. v. Gates, 190 Mo. 540; Rice v. St. Louis, 165 Mo. 636.

*T. B. McGinnis,* Prosecuting Attorney, and *Hostetter & Haley,* of counsel, for respondent.

(1) The trial court was within the law in sustaining defendants' demurrers to the petitions. Reardon v. St. Louis County, 36 Mo. 555; Hannon v. St. Louis County, 62 Mo. 313; Swineford v. Franklin County, 73 Mo. 279; Clark v. Adair County, 79 Mo. 536; Pundman v. St. Charles County, 110 Mo. 594; State ex rel. v. Gravel Road Co., 138 Mo. 332; State ex rel. v. County Court, 142 Mo. 583; Searcy v. Clay County, 176 Mo. 515; Stealey v. Kansas City, 179 Mo. 406; Foster v. Kansas City, 114 Mo. App. 728; State ex rel. v. Road Co., 207 Mo. 54; State ex rel. v. Road Co., 207 Mo. 85. (2) "The statute gives to the county court, in express terms, the care and superintendence of the highways and bridges of the county, and confers upon it all the powers requisite to the execution of the trust; and it derives all its authority, not through the county, but directly from the statute. The county has no authority to give any direction or instruction to the county court as to the proper performance of its duty." It acts independently of the county in obedience to state laws. Duties imposed upon the county court by the Legislature it performs as acts of obedience to the Legislature directly, as a state functionary, and not as an agent of the county. Reardon v. St. Louis County, 36 Mo. 561; Lamar v. Bolivar Special Road Dist., 201 S. W. 892. (3) After the expiration of the franchise of the Louisiana & Middletown Gravel or Macadamized Road Company, the easement, as in an ordinary road, vested in the public, and the status of the road was just the same as any other public highway. Laws 1899, pp. 345-346; R. S. 1899, sec. 9547; State ex rel. v. Gravel Road Co., 138 Mo. 339; State ex rel. v. Road Co., 207 Mo. 54; State ex rel. v. Road Co., 207 Mo. 85. (4) "A turnpike (toll road) is a highway differing neither in the responsibility for its proper maintenance nor in any other particular from an ordinary highway, save in the mode of constructing and maintaining it." State ex rel. v.

Gravel Road Co., 138 Mo. 341;   State ex rel. v. Road Co., 207 Mo. 76.

BROWN, C.—This is a suit for damages arising from personal injury. The automobile in which plaintiff and his wife were traveling on the night of August 17, 1915, ran over the bank and into the bed of a stream from which the bridge had been removed and which had been left unguarded, and both were seriously injured. Her suit for damages received in the same disaster, entitled M. P. Moxley v. Pike County, and numbered 19589, is also here upon appeal from the same court, upon a similar record, and is submitted with his. The judgment in each is for the defendant upon demurrer to the petition sustained, and refusal to amend.

The road upon which the injury occurred was constructed and operated as a toll road by a corporation called the Louisiana & Middletown Gravel or Macadamized Road Company, which seems to have been organized in pursuance of an act of the General Assembly approved March 21, 1872, Laws 1871-2, p. 227, and makes its plea for validity under the provision of Section 27 of Article 4 of the Constitution of 1865 by the recital that it is amendatory of an act approved February 27, 1851. This is unimportant, as the corporate existence of the owner, whichever it was, is admitted to have been extinct in 1899, when Sections 9547 and 9548 of the Revised Statutes of that year were enacted, under which the county court of Pike County, in 1903, took possession of the road in that county, and continued to maintain, control, manage and operate it as a toll road up to the time of the injury. The road was more than five miles in length, and complied otherwise with those sections. The single point is made that in taking over the control and management of it, and charging and collecting tolls as provided in said Section 9548, the county became liable for damages resulting from negligent failure to keep it in safe condition.

I. When, for convenience in the administration of its laws, the State, through the Legislature, calls to its aid those territorial organizations sometimes called, with more or less accuracy, *quasi*-corporations, such as counties, townships and school districts, the question has frequently arisen whether these agencies share, with the State itself, immunity from common-law liability for the negligence of their officers in the exercise of their territorial duties. The answer, from the courts of this State, has generally been a negative one. From Reardon v. St. Louis County, 36 Mo. 555, down to Lamar v. Bolivar Special Road District, 201 S. W. 890, are many cases which will be found collected in the case last cited which have settled the general principle so firmly that it is not questioned by this appellant. On the other hand, it has been equally well settled that municipal corporations which include cities, towns and villages are, in the control, management and maintenance of their streets, alleys and public places, subject to such liability. The cases recognizing this doctrine are so numerous and so constantly before our appellate courts and their doctrine so well recognized as to render citations not only unnecessary but unjustifiable. This general doctrine is also recognized and admitted by the parties to this appeal.

The appellant insists that between the sharp lines drawn in the adjudications to which we have referred, there is a neutral zone—a no man's land, so to speak —in which special facts rather than broad principles determine the side upon which the particular action must be arrayed. In this case the question is made to turn upon the fact that the road upon which the injury was received was built by a corporation organized by the Legislature for that purpose, with an authorized capital consisting of subscriptions both private and public, and clothed with the State's right of eminent domain. [Laws 1851, p. 403, and Laws 1872, p. 227.] This is said to give the property a private character which attached to the State or county in relation to its ownership, control and management as a toll road. To

make this question plain we should look to the foundation of the distinction in the character of the two classes of public agencies which controls their liability. The nearer we come to the true reason of the distinction between political "*quasi*-corporations" and "municipal corporations" the more easy will be its application to both.

II. In the organization of counties the legislative purpose is to divide the State into convenient districts for the purpose of administering the laws under the eye of legal agencies created for that purpose and convenient of access to the people. Optional powers are frequently given as required by local conditions, and, perhaps, legal prejudices; but these are of the very essence of uniformity—that real uniformity which is exhibited in results rather than in methods of achieving them.

On the other hand, as we have already had some occasion to explain in Kansas City v. Holmes, 202 S. W. 392, the foundation of the distinction against municipal corporations is laid wide and deep in private interests which mark the first step in their creation. It consists, in this State, of filing a plat. Some proprietor, ambitious for the gains that come from a system of streets, alleys and other urban improvements which attend the creation of a city, lays it out according to his own idea, and trusts the future for that development which he hopes will immeasurably increase the value of every lot and plat of ground which it includes. Purchasers come who partake of his hope, and join him in a system of development of streets, public squares and limited building districts, which are the principal elements of the expected profit. The State provides a plan by which the pride and ambition of the inhabitants of the surrounding country may be utilized for the benefit of the urban corporations (Chap. 102, Art. 6, R. S. 1909) and the fullest authority is given the corporation to control all improvements for the best interest of the inhabitants and other owners of urban property. These and

other similar conditions affect the development of municipal corporations, and afford ample ground for the distinction which exists in this State between them and other governmental agencies with respect to their liability for the negligence of their officers and agents in the construction and maintenance of the class of improvement upon which their development and the peculiar value of their immovable property stands.

III. There are various ways provided by law in this State for the construction and maintenance in good condition of its roads and bridges besides the assessment and collection of the tax levied upon the value of property, some of which are tribute founded upon their use, as in case of the motor-vehicle license fees, which are placed by law in the "Good Roads Fund" of the State, and the tolls that counties are permitted to take upon graveled or macadamized roads taken over by the several county courts under the provisions of Sections 9547 and 9548, Revised Statutes 1899, is appropriated to the payment of the expense of operating the road.

The act under which this road was constructed gave the corporation the right to acquire for the State the right of way for the public use to which it was devoted, and such land as was acquired by voluntary grant, and used for that purpose, was perpetually dedicated by that act to the public use; so that when the life of the corporation ceased by the expiration of its charter the ownership of the easement upon the property, as it then existed, was subject to legislative control. The Legislature by the Act of 1899 placed it under the "control and management" of the county court (not of the county) as its agent for that purpose, and the right of the court to collect a fee or toll for its use as a contribution for its maintenance, imposed no other liability upon the county than would the imposition of any other fee or tax for that purpose. These questions, except the last, which is a mere corolary, were fully considered and determined to our satisfac-

tion in State ex rel. v. Road Company, 207 Mo. 54; State ex rel. v. Road Company, Id. 85; State ex rel. v. Gravel Road Company, 138 Mo. 332, in the first two of which the judges of this court, sitting *en banc* all concurred.

Hannon v. County of St. Louis, 62 Mo. 313, is relied on by appellant to sustain the theory that the exercise of the control and management vested in the county court by the Act of 1899, being discretionary and not compulsory, its exercise placed the county in the position and saddled it with the personal liability of a private or municipal corporation with respect to the duties growing out of the position that administrative tribunal had chosen to occupy. This discretion to determine whether this road should become a part of the general system of highways in the State does not differ even in degree, from the discretion vested in the court in many other respects concerning the establishment or improvement and maintenance of roads and bridges. As for the Hannon case, its general doctrine, even if originally applicable to the question now before us, was abandoned in Swineford v. Franklin County, 73 Mo. 279, and the doctrine of the Reardon case, supra, applied.

For the reasons we have stated we hold that the county court of Pike County, in taking over the control and management of the road in question by authority of the Act of 1899, and maintaining toll gates thereon, and collecting tolls from travelers to provide a fund for its maintenance, was acting in the capacity of agent of the State, and that its negligence in the performance of the duties arising from such official relation is not imputible to the county, which is not, therefore, liable in this suit. The judgment of the Pike County Circuit Court is affirmed.

RAILEY, C., concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.