EMELINE ZUMMO, Appellant, v. KANSAS CITY.

Division One, December 2, 1920.

1. **CITIES: Police Powers: Pecuniary Liability for Wrongful Acts of Agents.** The same immunity which protects the State from pecuniary liability for the wrongful acts of officers and agents employed by it in the exercise of its police powers extends to municipal and quasi-municipal corporations created by it for the purpose of and charged with the exercise of the same powers.

Zummo v. Kansas City.

2. ———: ———: ———: **Injury to Hospital Patient.** Kansas City is not liable in damages for the death of a patient caused by a violent patient who were placed in the same cell of a city hospital by its officers and agents. The preservation of the public health is an exercise of police power, which appertains to a govermental or public duty, and the city charter creates a hospital and health department and provides that it shall have the power and be its duty to enforce the laws of the State and charter and ordinances of the city relating to the public health, and shall have the care, management and control of city hospitals, and make rules and regulations for the support, maintenance and confinement of insane persons and all other persons confined therein; and thereby the city is made, not merely the agent of the State, but an integral part of the State government, for the enforcement and exercise of the State's police powers, and partakes of the State's immunities from pecuniary liability for the wrongful conduct of the officers and agents of the city hospital.

3. ———: ———: ———: **Private Capacity.** The liability of a city for damages resulting from its failure to maintain its streets and parks in safe condition, which arises from the operation of public utilities for profit, has no relation to the pecuniary liability of a city for wrongful acts committed by its agents or officers in the exercise of the police powers, which appertain to its governmental and public character, as distinguished from acts done by it in its private capacity.

Appeal from Jackson Circuit Court.—*Hon. Kimbrough Stone,* Judge.

AFFIRMED.

· *J. Roy Smith* for appellant.

(1) The respondent under the Constitution owes certain duties and is charged with certain responsibilities. Mo. Cons. secs. 4 and 30, art. 2. The Charter of Kansas City was adopted subject to the limitations of the Construction and the laws of Missouri, and must be in substantial harmony therewith. Charter, sec. 1, p. 97; Charter, Art. 14; Kansas City v. Bacon, 147 Mo. 259; Hass v. Ward, 186 Mo. 325. The Charter was adopted under authority of the laws of Missouri, as provided for in the Constitution. The State did not give this charter of 1908 to the respondent; the power was given the

municipality to adopt a charter, which was done by vote of the citizens comprising the municipality; the city is not therefore charged with the duty of maintaining a general hospital. It thereupon develops that it is not a governmental function, but a ministerial duty assumed by the people comprising the municipality. R. S. 1909, sec. 9703 et seq. and sec. 9754; Mo. Constitution, sec. 16, art. 9; Charter, p. 18. "A municipal corporation possesses power granted in express words, those necessarily or fairly implied in or incidental to express powers, and those essential to declared purposes of corporation," using the word "essential" in the sense of "indispensable," and not merely convenient. City of St. Louis v. Dreisoerner, 243 Mo. 217; City of Long Beach v. Lisenby, 166 Pac. (Cal.) 333. Under common law the municipality is protected from liability inly while exercising delegated functions of sovereignty. Chafer v. City of Long Beach, 163 Pac. (Cal.) 670; Boise Dev. Co. v. Boise City, 167 Pac. (Idaho) 1032. The Constitution made no change in the common-law liability—the common law therefore prevails. Mo. Constitution, Schedule. After the legislative power has been exercised in location and establishment, then the maintenance of the institution pursuant to former action is ministerial, and the municipality will be liable. 28 Cyc. 1263, 1266; Bowden v. Kansas City, Kan., 69 Kan. 587, 105 Am. St. 187; Trower v. City of Louisiana, 198 Mo. App. 198; Nelson v. Kansas City, 170 Mo. App. 542; Ely v. City of St. Louis, 181 Mo. 723; Cassidy v. City of St. Joseph, 247 Mo. 206; Deaconess Home v. Bontjes, 104 Ill. App. 484; 28 Cyc. 1285. "In performing the duties relating solely to its corporate charter, the city is liable for injuries caused by the negligence of its agents." Healy v. Kansas City, 277 Mo. 626; Barree v. Cape Girardeau, 197 Mo. 391; Jones v. New Haven, 34 Conn. 1. The city parks and city hospitals of Kansas City, were conceived and born of the same parents, and the liability that attaches to the municipality because

of neglect in the conduct and management of city parks certainly follows the municipality in its conduct and management of the general hospital. R. S. 1909, sec. 9754; Charter, p. 83; Capps v. City of St. Louis, 251 Mo. 252; Carey v. Kansas City, 187 Mo. 715; Mayhew v. Burns, 103 Ind. 328.

*E. M. Harber, Burr N. Mosman* and *Ilus M. Lee* for respondent.

(1) The petition does not contain a sufficient charge of negligence, and the demurrer was properly sustained. O'Brien v. Transit Co., 212 Mo. 66; Removich v. Const. Co., 264 Mo. 43; State ex rel. Newspapers Assn. v. Ellison, 176 S. W. 11; Taylor v. Iron Co., 133 Mo. 358; Knapp, Stout & Co. v. St. Louis, 156 Mo. 353; Benjamin v. Railroad, 245 Mo. 598; State ex rel. v. Ellison, 266 Mo. 423; Darrow v. Briggs, 261 Mo. 278. (2) A municipal corporation, while in the exercise of a governmental function, is not liable for the negligence of its officers and employees and the demurrer was properly sustained. 28 Cyc. 1305; 4 Dillon, sec. 1661; 6 McQuillin, sec. 2623; Murtaugh v. St. Louis, 44 Mo. 479; Richmond v. Long's Admr., 17 Grat. (Va.) 375; McKenna v. St. Louis, 6 Mo. App. 320; Ulrich v. St. Louis, 112 Mo. 143; Cassidy v. St. Joseph, 247 Mo. 197; Healy v. Kansas City, 277 Mo. 626; Browder v. City of Henderson, 207 S. W. (Ky.) 479; Frost v. Topeka, 98 Kan. 636; Butler v. Kansas City, 97 Kan. 239; Benton v. Trustees City Hospital, 140 Mass. 13; Hill v. Boston, 122 Mass. 344; Evans v. Kankakee, 231 Ill. 223; Tollefson v. Ottawa, 228 Ill. 134; Culver v. Streator, 130 Ill. 238; Adams v. University Hospital, 122 Mo. App. 673; Whittaker v. St. Luke's Hospital, 137 Mo. App. 116; Nicholas v. Deaconess Home, 219 S. W. 643.

BROWN, C.—Petition filed in the Circuit Court of Jackson County Court May 5, 1915. Omitting caption and signature it is as follows:

285 Mo.—15

"Plaintiff for her cause of action states that the defendant is now, and at all times hereinafter mentioned, was a municipal corporation, duly organized and existing according to law.

"That the General Hospital is now and was, at all times hereinafter mentioned, the City Hospital in Kansas City, Missouri, and under the control and regulation of said defendant corporation.

"That under the law it is now, and was at all the times hereinafter mentioned, the duty of the defendant, Kansas City, to have, keep and maintain said hospital, and to provide for the safety and well being of the patients therein.

"That on or about the eighth day of April, 1915, one Antonio Zummo, who was suffering from swamp fever, was taken to the General Hospital, at which hospital there was one Pete Gustia, who had been violent at times, and had been placed in restraint, from which restraint he had at least once freed himself.

"That on Friday, April 16, 1915, shortly prior to 9 a. m., the said Pete Gustia had a violent spell, and thereafter about 9 a. m. the said Pete Gustia was placed in the same cell with Antonio Zummo, both men wearing restraints; that afterwards, to-wit, on Saturday, April 17, 1915, sometime between one and one-fifteen p. m., the said Antonio Zummo was murdered in the cell; that it was alleged he was strangled; that there were certain marks of violence on his head and body, which was disclosed at the coroner's inquest, and there were other marks of violence and wounds found on the head and body of the said Antonio Zummo, which were not disclosed by the said inquest, and which wounds were of a fatal nature, the result of malfeasance or misfeasance on the part of defendant's agents.

"That the defendant had carelessly and negligently suffered and permitted a lack of oversight and control over the patients in the said hospital.

"That the defendant knew, or by the exercise of ordinary care could have known, of the dangerous practice of placing two patients in the same cell in the said hospital when one or both of said patients were violent, and could have prevented this murder by the exercise of caution, care and prudence.

"Plaintiff states that within ninety days of the occurrence of said murder, to-wit, on the fifth day of May, 1915, she caused to be served upon the mayor of said defendant, Kansas City, a written notice stating the place and the time when the injury complained of was done, and the character and circumstances thereof, and that she claimed damages therefor from said defendant, Kansas City, a copy of which said notice is hereto attached as a part hereof.

"Plaintiff further states that by reason of said carelessness, negligence, malfeasance, and misfeasance of defendant and defendant's agents, the same Antonio Zummo was murdered; that he was the husband and the sole support of this plaintiff; that by reason of the premises she has lost her husband, his love and affection, his care and support, and because thereof has been damaged in the sum of $10,000, for which, together with her costs in this action, she prays judgment."

On June 9, following, the defendant demurred in the following words, caption and signature omitted:

"Defendant demurs to plaintiff's petition, and for ground thereof says that said petition fails to state facts sufficient to constitute a cause of action against this defendant."

On March 13, 1916, the demurrer was taken up and heard by the court and sustained.

The plaintiff refusing to plead further, judgment for defendant was entered on January 12, 1919, from which judgment this appeal was duly taken, and the cause is properly presented for our determination on the sufficiency of the petition.

I. The petition, which we have copied in full in the foregoing statement, is a model of circumlocution and uncertainty. In the *ad damnum* it reveals the fact that the deceased was the plaintiff's husband. A careful reading discloses that the claim is found- **Wrongful Acts of Agents.** ed upon the assumed liability of the defendant city in damages for his death under circumstances which, although meagerly and indefinitely stated, indicate by necessary inference that the defendant, in its municipal capacity, owned and operated a hospital in which it received plaintiff's husband, who was sick, as a patient, and carelessly and negligently, by its agents and servants in charge of the said hospital, caused him to be confined in a "cell" with an insane patient known by it to be violent so as to require restraint, who killed him.

These facts, evident upon the face of the petition, raise the question whether the defendant is liable in damages on account of acts done or omitted by its agents and employees in the conduct of its hospital. If it appears from the petition that there was no cause of action in the mind of the pleader, the form in which he has expressed himself is not important. We will therefore proceed to the question of the defendant's liability for wrongs of this character committed by its agents, without reference to the form of words in which they are pleaded.

There is no principle which stands upon a firmer foundation of reason, or which is protected by more abundant judical authority, than the rule that the same immunity which protects the State from pecuniary liability for the wrongful acts of officers and agents employed by it in the exercise of its police powers, extends also to municipal and *quasi*-corporations created by the State for the purpose of and charged with the exercise of the same powers. The rule has been often stated by this court in cases against counties and road districts for damages resulting from failure to main-

tain public roads within their limits and subject by law to their supervision and control. A great number of these will be found cited in the late case of Lamar v. Bolivar Special Road District, 201 S. W. 890, which has since been followed and applied in Moxley v. Pike County, 276 Mo. 449.

It is said, however, that a different rule applies to municipal corporations, which are constantly held liable for damages from failure to maintain their streets in a safe condition. This is true, and arises from the fact that the powers vested in and exercised by municipal corporations are of a twofold nature. In a purely governmental capacity they include the ordinary police powers of the State within their limits. Their police officers are the peace offcers of the State, preserving public order bymeans appropriate to the density of an urban population. In this they are performing a duty which the State owes alike to all persons within its limits; the duty to protect them in the exercise of their individual rights. No element of safety is more important than those pertaining to the public health. The health and police departments of the city are parts of the general government of the State as administered for those purposes.

JUDGE DILLON in 1 Mun. Corp. (5 Ed.) sec. 301, states the rule as follows: "Many of the powers exercised by municipalities fall within what is known as the *police power* of the State, and are delegated to them to be exercised for the public good. Of this nature is the authority to suppress nuisances, preserve health, prevent fires, to regulate the use and storing of dangerous articles, to establish and control markets, and the like. . . . Laws and ordinances relating to the comfort, health, convenience, good order and general welfare of the inhabitants are comprehensively styled 'Police Laws or Regulations.' "

This clear and accurate statement was adopted and approved by the court in Healy v. Kansas City, 277

Mo. 1. c. 626, following our early decisions in Cassidy v. St. Joseph, 247 Mo. 197, 206; Ulrich v. St. Louis, 112 Mo. 138, 1. c. 143; Murtaugh v. City, 44 Mo. 479, and other cases. Of the application of this rule to cases of this character, the same author (Sec. 1661) says: "The power or even duty on the part of a municipal corporation to make *provision for the public health and for the care of the sick and destitute,* appertains to it in its governmental or public, and not in its corporate, or as it is sometimes called, private capacity." We refer the curious to the great number of cases cited by the learned author in support of this statement.

The charter of Kansas City (Sec. 1, Art. 14) establishes within its limits "a hospital and health department," and provides that it "shall have the power and it shall be its duty:

"(a) To enforce the laws of the State of Missouri, ordinances of Kansas City, Missouri, and the provisions of this charter relating to public health; and to make such rules and regulations, not inconsistent with other provisions of this charter, as will tend to preserve and promote the public health.

"(b) To have the care, management and control of all buildings and property heretofore and now used and known as city hospitals and all lands and premises used in connection therewith, and, also, of all property and institutions now, or hereafter, owned or controlled by the city for the care and treatment of sick and injured persons; for the support, maintenance and confinement of insane persons, and for maintenance and support of poor persons; and to locate, establish and maintain quarantine hospitals and stations within, or outside of, the corporate limits of the city, and to have the custody of all persons confined in any such institutions."

The powers thus granted and the duty thus imposed could not be broader or more absolute. Among other things it is created the governmental instrument of the State in the enforcement of all laws relating to the public

health, with discretion to make by ordinance rules and regulations, *including the support, maintenance and confinement of insane persons.* In these respects it is the arm of the State government, including the use of its legislative powers so far as consistent with the Constitution and laws of the State. This being the case the same exemption enjoyed by the State itself from liability for damages inflicted by its officers and agents in the performance of similar duties attaches to the defendant city. For these purposes it is not merely an agency of the State but is, under the Constitution which is the authority for its existence, an integral part of the State government, and partakes of its immunities as well as its duties.

II. The liability of the city for damages resulting from its failure to maintain its streets and parks in safe condition has no relation whatever to this question. That liability has its foundation in the same principle upon which liability is imposed upon the municipal corporation for damage inflicted in the operation of public utilities for profit, which of corse inures to its members. In Moxley v. Pike County, 276 Mo. 449-454, in speaking of the distinction between *quasi-corporations* which constitute, for the purpose of administration alone, mere political divisions of the State, and municipal corporations organized and established in some respects for the profit and advantage of their proprietorial members, we said:

"On the other hand, as we have already had some occasion to explain in Kansas City v. Holmes, 202 S. W. 392, the foundation of the distinction against municipal corporations is laid wide and deep in private interests which mark the first step in their creation. It consists, in this State, of filing a plat. Some proprietor, ambitious for the gains that come from a system of streets, alleys and other urban improvements which attend the creation of a city, lays it out according to his own idea, and trusts the future for that development which he hopes will immeasurably increase the value of

every lot and plat of ground which it includes. Purchasers come who partake of his hope, and join him in a system of development of streets, public squares and limited building districts, which are the principal elements of the expected profit. The State provides a plan by which the pride and ambition of the inhabitants of the surrounding country may be utilized for the benefit of the urban corporations (Chap. 102, Art. 6, R. S. 1909) and the fullest authority is given the corporation to control all improvements for the best interest of the inhabitants and other owners of urban property. These and other similar conditions affect the development of municipal corporations, and afford ample ground for the distinction which exists in this State between them and other governmental agencies with respect to their liability for the negligence of their officers and agents in the construction and maintenance of the class of improvement upon which their development and the peculiar value of their immovable property stands.''

No such condition exists in this case. The duty resulting in the injury out of which this action grew related as plainly to the police power of the State as the duty of its officers in suppressing disorder and maintaining the peace. Having arrived at this conculsion it is unnecessary to notice other points suggested by respondent as to the sufficiency of the petition.

The judgment of the Jackson County Circuit Court is affirmed. *Small* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All of the judges concur.