**Dale YOUNGER and Yvonne Younger, Appellants,**

v.

**MISSOURI PUBLIC ENTITY RISK MANAGEMENT FUND and Rebecca Leiter, et al., Respondents.**

**No. WD 52533.**

Missouri Court of Appeals,
Western District.

Sept. 30, 1997.

As Modified Nov. 25, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1997.

Application for Transfer Denied
Jan. 27, 1998.

Danieal H. Miller, Columbia, for appellants.

Steven F. Coronado, Sherman, Taff & Bangert, Kansas City, R. Max Humphreys, Carson & Coil, Jefferson City, for respondents.

Before LOWENSTEIN, P.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

This appeal originates from a garnishment action filed by the Youngers against the Missouri Public Entity Risk Management Fund (MoPERM) and three nurses, Peggy Kuhlman, Linda M. Jeffries, and Rebecca Leiter.[1] The Youngers sought to recover judgments for medical malpractice totalling $1,330,634, which were rendered in favor of the Youngers and against the nurses in a prior suit.

1. Peggy Kuhlman and Linda Jeffress are registered nurses and Rebecca Leiter is a licensed practical nurse. Hereinafter, this court will refer to them collectively as the nurses.

The trial court granted MoPERM's motion for summary judgment.

The Youngers contend on appeal that the trial court erred in granting summary judgment because MoPERM funds are available as liability insurance coverage to satisfy their judgment against the nurses since coverage is provided without exclusion by the terms of the "Memorandum of Coverage" issued by MoPERM to the City of Sedalia, Missouri. They also claim that coverage is mandated by § 537.705.1, RSMo 1994.[2] This court finds that coverage is statutorily mandated by § 537.705.1 for tort claims against any officer or employee of a participating public entity, if the claim arose out of the officer or employee's official duties on behalf of the public entity. Although the question of whether the nurses are employed by the hospital may ordinarily be a question of fact, here, there is no dispute that Bothwell employed the nurses. Therefore, because the hospital and city are one entity, the hospital is a participating public entity under § 537.705.1 and the statute mandates coverage of the Youngers' claims. The judgment of the trial court is reversed and remanded.

On October 8, 1991, Mr. Younger underwent surgery at Bothwell Regional Health Center, a hospital owned and operated by the City of Sedalia. During surgery, Mr. Younger experienced changes in his vital signs and a subsequent cardiac arrest. As a result, he is now permanently brain damaged.

Mr. and Mrs. Younger sued eight separate defendants for medical malpractice, including the City of Sedalia, doing business as Bothwell Regional Health Center, and the nurses. The Youngers voluntarily dismissed their claims against four of the defendants pursuant to an agreement, and Bothwell was dismissed after asserting the affirmative defense of sovereign immunity. The nurses were the sole remaining defendants.

Prior to trial, the Youngers and the nurses executed a written agreement pursuant to § 537.065 which granted the nurses protection from enforcement of any judgments, except to the extent the Youngers' claim was covered by the Memorandum of Coverage issued by MoPERM to the City of Sedalia. As part of the agreement, the nurses stated that they were directly employed by the City of Sedalia and were acting within the course and scope of their duties when they negligently administered medication to Mr. Younger during his surgery at Bothwell. Thereafter the trial court rendered judgments totalling $1,330,634 against the nurses and in favor of Mr. and Mrs. Younger. The Youngers' efforts to satisfy these judgments from MoPERM funds proved unsuccessful and the present garnishment action ensued.

In their garnishment petition, the Youngers asserted that MoPERM funds were available as liability insurance coverage for payment of their unsatisfied judgment against the nurses under § 537.705.1, as well as under the Memorandum issued by MoPERM to the City of Sedalia. This was based on their claim that the nurses were covered city employees while working at Bothwell Regional Health Center. MoPERM denied coverage and moved for summary judgment pursuant to Rule 74.04. In response to the motion for summary judgment, the Youngers alleged that coverage was mandated by § 537.705 and by the Memorandum. The trial court granted summary judgment, finding that no coverage existed under the terms of the Memorandum and, therefore, MoPERM had no obligation to indemnify. The Youngers appeal.

MoPERM is a state-operated risk management fund for local public entities which has the same effect as a self-insurance plan. Section 537.705.1. Certain public entities, including cities, have the option of participating in the fund and making annual contributions to it. Sections 537.700.2(3) and 537.705.1. For a participating entity, MoPERM funds shall be available for: (1) the payment and settlement of all claims for which a public entity obtained coverage; (2) for the payment and settlement of all tort claims against an officer or employee of the public entity, if the claim arose out of the performance of the officer or employee's official duties on behalf of the entity; and (3) for any attorney fees and expenses incurred in

2. All statutory references are to the Revised Statutes of Missouri 1994, unless otherwise noted.

the settlement and defense of the covered claims. Section 537.705.1.

At the time of Mr. Younger's surgery, the City of Sedalia was a public entity participating in MoPERM and the sole "Member Agency" identified in the Memorandum issued by MoPERM to the City of Sedalia. The Memorandum provided the city and all "Covered Parties" with coverage for liability created by the statutory waiver of sovereign immunity in § 537.600.1(1)–(2). The Memorandum permitted claims attributable to a dangerous condition of the city's property, or claims arising from the negligence of a city employee while operating a motor vehicle within the course of employment. Section 537.600.1. The Memorandum also provided coverage for the member agency for claims on causes of action other than those established by Missouri law and coverage for public officials and employees on all claims if imposed by law or assumed by contract.

In addition to these general provisions, the Memorandum contained an exclusion for liability due to a health care facility's rendering or failure to render medical services. However, the Memorandum provided for an exception to this exclusion and provided coverage for the services of registered nurses, licensed practical nurses or nurses' aides directly employed by the Member Agency. It is this exception to the general exclusion that the Youngers claim grants them coverage under the Memorandum.

On February 26, 1996, the trial court granted MoPERM's motion for summary judgment, finding that:

> Based on the material facts to which there is no genuine dispute the Court concludes the terms of the Memorandum of Coverage issued by MoPERM to its member agency, the City of Sedalia, given the plain meaning of the language contained in the Memorandum, consistent with reasonable expectations, objectives and intent of the parties affords no coverage for the claims or causes of action out of which the judgment entry dated October 28, 1993 against [the nurses] arises. The Court further concludes on October 8, 1991 at the time Dale Younger was a patient at Bothwell Regional Health Center, [the nurses] were

directly employed by Bothwell and were not directly employed by the City of Sedalia. Under the circumstances, summary judgment is proper.

The trial court also sustained the motion for summary judgment filed by the nurses but did not consider whether coverage was mandated by § 537.705. The Youngers filed a timely appeal to this court.

In their sole point on appeal, the Youngers contend that the trial court erred in granting summary judgment in favor of MoPERM and the nurses because they were not entitled to judgment as a matter of law since MoPERM funds are available as liability insurance coverage to satisfy their judgment against the nurses. Specifically, the Youngers argue that (1) coverage is mandated by § 537.705.1; and (2) that coverage is provided, without exclusion, by the terms of the Memorandum issued by MoPERM to the City of Sedalia because Bothwell is not a separate entity and the City of Sedalia directly employed the nurses.

In reviewing a grant of summary judgment, this court views the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). "Appellate review is essentially *de novo*." *Rice v. Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996). The criteria for ascertaining the propriety of summary judgment on appeal are the same as those used by the trial court when determining the propriety of sustaining the motion initially. *Id.* Summary judgment is appropriate if the movant has a right to judgment as a matter of law and no genuine issue of material fact exists. *Id.* A "genuine issue" is one that is real, not merely argumentative, imaginary or frivolous. *ITT*, 854 S.W.2d at 382.

■ Here, the trial court entered summary judgment on the ground that the Memorandum of Coverage does not show that the parties intended to cover the Youngers' claims. However, statutorily mandated coverage supersedes the agreement of the parties and invalidates any contrary clauses in those agreements as void against public poli-

cy. *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479, 480 (Mo. banc 1992). Therefore, in order to address the propriety of summary judgment, this court must first consider what the trial court did not: whether § 537.705 statutorily mandates coverage of the Youngers' claim regardless of the intent of the parties as expressed in the Memorandum of Coverage.

■■■ Resolution of the issue of whether § 537.705 mandates coverage involves statutory interpretation. This court ascertains the intent of the legislature from the "language of the act, considering the words used in their plain and ordinary meaning, and [giving] meaning to the words used within the broad context of the legislature's purpose in enacting the law." *Connor v. Monkem Co., Inc.*, 898 S.W.2d 89, 90 (Mo. banc 1995) (quoting *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993)). This is a fundamental rule of statutory interpretation. *Baggerly v. Missouri State Employee's Retirement System*, 858 S.W.2d 765, 767 (Mo.App.1993). "A legislative act's provisions must be construed and considered together and, if possible, all provisions must be harmonized and every clause given some meaning." *Boyd v. Bd. of Registration for the Healing Arts*, 916 S.W.2d 311, 315 (Mo.App.1995). This court presumes that the legislature does not enact meaningless provisions. *Id.*

■■■ Section 537.705.1 establishes the terms and conditions for payment of Mo-PERM funds. According to § 537.705.1(1), moneys in the fund shall be available to the extent the participating public entity has chosen to purchase coverage. Under § 537.705.1(2), moneys in the fund shall also be available for payment and settlement of tort claims against employees of a participating public entity. The statute reads:

1. All public entities in Missouri shall have the option of participating in the fund and making annual contributions to the fund in the amount determined by the board in accordance with the provisions of section 379.470, RSMo, relating to rates established by insurers. Participation in the fund has the same effect as purchase of insurance by the public entity, as otherwise provided by law, and shall have the

same effect as a self-insurance plan adopted by the governing body of any political subdivision of the state. Moneys in the fund shall be available for:

(1) The payment and settlement of all claims for which coverage has been obtained by any public entity in accordance with coverages offered by the board;

(2) The payment and settlement of tort claims against any officer or employee of a participating public entity when the claim is upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the participating public entity;

(3) Attorney's fees and expenses incurred in the settlement and defense of such entities and persons for claims specified in this subsection.

The legislature's specific use of the word "shall" indicates that these provisions are mandatory and not permissive. *Greenwich Condo. Ass'n v. Clayton Inv.*, 918 S.W.2d 410, 414 (Mo.App.1996). In other words, moneys in the fund must be paid for claims falling within the coverage purchased by the public entity and for tort claims against the public entity's officers and employees to the extent these claims relate to conduct performed in connection with the employees' official duties.

■■■ The general language of § 537.705.1(1) indicates that the legislature intended money to be available for claims for which the public entity has obtained coverage through MoPERM. The specific language of § 537.705.1(2) indicates that the legislature also intended funds to be available for tort claims against the officers and employees of a participating public entity. Where one provision of a statute contains general language and another provision in the same statute contains more specific language, the general language should give way to the specific. *Boyd*, 916 S.W.2d at 315. Under this rule, the general provision of § 537.705.1(1) gives way to the more specific language of § 537.705.1(2). The fact that the legislature specifically singled out tort claims in the second subpart indicates that it did not intend coverage for tort claims to be limited

to just that coverage obtained by the public entity as provided for in § 537.705.1(1). Therefore, moneys in the fund are available for the payment and settlement of tort claims regardless of whether the entity obtained such coverage. In other words, it is unnecessary for participating public entities to obtain this coverage because it is mandated by statute.

To construe the statute otherwise would render the language of § 537.705.1(2) meaningless by limiting its application to only that coverage the public entity purchased. All provisions of a statute must be harmonized and every clause must have some meaning. *Id.* Our harmonization of the statute preserves the integrity of both subdivisions of § 537.705.1 and effectuates the plain meaning of the statute. Our interpretation of the statute that it mandates coverage for tort claims against officers and employees of participating public entities gives plain meaning to the legislature's use of the mandatory term "shall" when it described in what instances coverage of tort claims applies. Therefore, moneys in the fund shall be available for the settlement and payment of tort claims so described in § 537.705.1(2).

Because § 537.705.1(2) mandates coverage for tort claims in specific instances, we need not consider the Memorandum of Coverage unless the claim against the nurses does not fall within subsection two. In order to determine whether the claim against the nurses is covered by this portion of the statute, we must examine the undisputed facts in the record.

Here, the Youngers brought their medical malpractice action against nurses employed at a municipally-owned and operated hospital. Medical malpractice is a tort action requiring proof of negligence on the part of the health care provider. *See Bell v. Poplar Bluff Physicians Group,* 879 S.W.2d 618, 621–22 (Mo.App.1994). The Youngers alleged and presented evidence that the nurses were negligent in numerous respects. Specifically, there was evidence that the nurses negligently failed to properly administer Mr. Younger's medication and failed to properly diagnose and treat his symptoms. In its judgment, the trial court found that

Dale Younger's personal injuries were proximately caused by the negligent acts and omissions of defendants Leiter, Kuhlman and Jeffries in the administration of medication on October 8, 1991. As such, the Youngers' claim, upon which they received judgment, was a tort cause of action within the meaning of the provisions of § 537.705.1(2).

Section 537.705.1(2) also requires that the nurses be officers or employees of a participating public entity performing "official duties on behalf of the participating public entity." The nurses' negligence occurred during Mr. Younger's surgery at which time they were performing their daily functions at the direction of and for the benefit of Bothwell Regional Health Center. As such, the Youngers' medical malpractice claim relates to the nurses' official duties on behalf of Bothwell Regional Health Center.

Coverage would be mandated by statute, then, if the nurses qualify as officers or employees of the participating public entity on whose behalf they performed their official duties. The undisputed fact is that the nurses were employed at Bothwell Regional Health Center at the time the alleged negligence occurred. And, it was the City of Sedalia, not Bothwell, which was listed as the participating public entity in the Memorandum of Coverage issued by MoPERM. Therefore, the question is whether the fact that Bothwell Regional Health Center is owned and operated by the City of Sedalia qualifies it as a participating public entity at the time of Mr. Younger's injury. To answer this question, the relationship between the city and the hospital must be examined.

The Missouri Supreme Court has considered the relationship between a municipally owned hospital and the municipality on several occasions. The first of these occurred in the 1920 case of *Zummo v. Kansas City,* 285 Mo. 222, 225 S.W. 934 (1920). In that case, the court held that the predecessor to Truman Medical Center, a city-run hospital, was entitled to sovereign immunity because the hospital and the city were not two distinct and separate entities. *Id.* 225 S.W. at 935. The court held that the city's operation of a municipal hospital was a governmental function just as any other action of the city. *Id.*

at 937. Therefore, the hospital was entitled to the same defense as the city because there was no reason to distinguish it as a separate entity from the city. *Id.*

In *Stacy v. Truman Medical Center*, 836 S.W.2d 911 (Mo. banc 1992), the court had to determine whether Truman Medical Center, a not-for-profit corporation operated by a board of directors, was entitled to sovereign immunity. In holding that it was not, the court distinguished Truman Medical Center's situation from the case where a city owns and operates a hospital, such as in *Zummo*. *Id.* at 917. Had a city owned and operated Truman Medical Center, the court indicated that the analysis would have been "straight-forward" and the hospital would have been entitled to sovereign immunity.

Finally, in *State ex rel. Bd. of Trustees v. Russell*, 843 S.W.2d 353 (Mo. banc 1992), the Supreme Court considered the question of whether a board of trustees which operated a hospital for a city was entitled to sovereign immunity in a medical malpractice suit. The hospital in *Russell* was created under the provisions of Chapter 96, RSMo. *Id.* at 355. In determining that the board was entitled to sovereign immunity, the court examined the statutory scheme of a Chapter 96 hospital to determine whether a Chapter 96 hospital is a separate entity from the creator city. *Id.*

In its analysis, the court noted that "[n]o-where in Chapter 96 is a board granted a corporate or political existence, perpetual succession, or existence after dissolution of its city. Neither is a board granted the power to sue and be sued, to tax, to issue bonds, or to hold property except as 'special trustees.'" *Id.* at 356. Furthermore, the court found persuasive the facts that the members of the board were controlled by the city because the city government selected the members of the board. *Id.* In addition, the court noted that the board and hospital were financially dependent on the city. Any revenue bonds issued to fund the hospital were issued by the city. *Id.* Under § 96.200, the board had to make annual reports "to the city council, showing the receipts of all funds and the expenditures therefrom, and showing each donation and amount thereof." *Id.*

Finally, the court compared the board of trustees with other entities that had been held to be separate public entities. The court distinguished its case from those on the ground that all of the entities held to be separate entities were created by enabling statutes that granted them a separate, corporate existence. *Id.* "The legislature did not include any grant of separate existence when it enacted the original law providing for city hospitals in third class cities." *Id.* at 357. Therefore, the court concluded that a Chapter 96 hospital is not a separate entity from its creator city because it has no existence except through the continued existence of the city.

Although the *Russell* decision deals with sovereign immunity, its conclusion that a city hospital and its creator city are one entity applies equally to our determination of whether the employee of a city hospital is an employee of the city. In *Stacy*, the court used the definition of "public entity" in § 537.700.2(3) to decide whether Truman Medical Center was a "public entity" under § 537.600 for purposes of sovereign immunity. 836 S.W.2d at 917. In so doing, the court noted that "the liability of public entities under sections 537.700 to 537.755 shall be the same as the liability of public entities under the sovereign immunity statute." *Id.* Likewise, the *Russell* court's analysis conducted for purposes of sovereign immunity is pertinent to the statutory interpretation of § 537.705.

Therefore, if Bothwell Regional Health Center is a city hospital governed by Chapter 96, then Bothwell and the city are one entity. And, the employees of Bothwell would be the employees of the city, a participating public entity, for purposes of § 537.705.1(2). In this regard, MoPERM stated in its memorandum in support of its motion for summary judgment that it was an undisputed fact that "Bothwell was established and is operated pursuant to Ch. 96 R.S.Mo." Because the issue is one of law rather than fact, however, this court examines the undisputed facts to reach its own conclusion whether Bothwell is a city hospital governed by Chapter 96.

The provisions of Chapter 96, specifically §§ 96.150 through 96.228, authorize third class cities to operate hospitals. As noted by Judge Thomas in *Russell*, the statute creating the predecessors to Chapter 96 was entitled "AN ACT to authorize cities of the third class to purchase, erect, lease, equip and maintain grounds and buildings for hospital purposes and to conduct and operate such a hospital." *Russell*, 843 S.W.2d at 355 (quoting 1921 Mo. Laws 46 (1st Extra Session)). Section 96.150 provides for the establishment of a city hospital through the submission of a tax to the voters of the city and grants a board of trustees authority to operate the hospital. Sections 96.160, 96.170, 96.175, 96.180 and 96.190 contain provisions concerning the appointment, terms and removal of members of the board of trustees. Under § 96.200, the board of trustees must present an annual report to the city council detailing the receipt and expenditure of all funds. Finally, §§ 96.222, 96.224, 96.226 and 96.228 contain provisions relating to the issuing of municipal revenue bonds to fund a city hospital.

The undisputed evidence, as it relates to the organization of Bothwell, is that the City of Sedalia passed an ordinance creating the hospital in 1934, thirteen years after the legislature enacted the predecessor statute to Chapter 96 analyzed by the court in *Russell*. The City of Sedalia is a third class city and Chapter 96 hospitals are only authorized for third class cities. Section 96.150.1. In addition, revenue bonds were issued by the city in 1991 in order to provide funding for Bothwell as is the case with Chapter 96 entities. Section 96.222. Here, as in *Russell* and as provided for in § 96.160.1, the board of trustees of the hospital is appointed by the mayor and approved by the city council. Furthermore, the board of trustees must make annual reports to the city government concerning receipts and expenditures as is required by § 96.200. This court also notes that Bothwell was dismissed from the original lawsuit based on the doctrine of sovereign immunity, suggesting that it could not sue or be sued as was the case in *Russell*. Finally, the Youngers presented evidence that suits on behalf of Bothwell are filed in the name of the city.

This is also suggestive of a Chapter 96 hospital. *See Russell*, 843 S.W.2d at 356.

As a result, we hold as a matter of law that Bothwell is a Chapter 96 hospital. Although there is no evidence in the record that the people of Sedalia voted on a tax to establish Bothwell, it possesses virtually every other feature of a Chapter 96 hospital. As for the tax issue, there is no indication that the language of § 96.150.5 providing for the board of trustee's authority to operate a hospital, is exclusively applicable to hospitals established by a tax under § 96.150.1. The evidence conclusively demonstrates that Bothwell is a Chapter 96 entity rather than one established under § 77.530. Therefore, under *Russell*, Bothwell and the City of Sedalia are not separate entities. Since the nurses were employed by Bothwell, they were employed by the city, the participating public entity under § 537.705. Since all the requirements for the mandatory coverage of § 537.705 have been satisfied in this case, the statute mandates coverage of the Youngers' claim.

Because § 537.705.1(2) mandates coverage of the Youngers' claim against the nurses, no exclusion contained in the Memorandum of Coverage can nullify that coverage. *See Halpin*, 823 S.W.2d at 481. Therefore, it is unnecessary to determine the parties' intent as expressed in the Memorandum of Coverage.

The trial court erred in entering summary judgment in favor of MoPERM and the respondent nurses. The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

All concur.