Gregory SHERF, Appellant,

v.

Chris KOSTER, et al., Respondents.

No. WD 73952.

Missouri Court of Appeals, Western District.

May 29, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 2012.

Application for Transfer Denied Aug. 14, 2012.

---

904

Sophie Woodworth, David R. Smith, Kansas City, MO, for appellant.

Ronald R. Holliger, Jefferson City, MO, for respondents.

Before Special Division: JAMES E. WELSH, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

PER CURIAM.

Gregory Sherf appeals the judgment of the Circuit Court of Cole County, granting the State of Missouri's motion for summary judgment on Sherf's attempt to collect from the State Legal Expense Fund. We affirm.

## Factual Background

The following facts were stipulated to by the parties and are not disputed on appeal. Gregory Sherf ("Sherf") filed a claim against Charles Antoniak ("Antoniak") in the United States District Court for the Western District of Missouri ("federal court") on April 18, 2003, which was subsequently dismissed without prejudice and re-filed in that same court on May 12, 2005. The lawsuit alleged that Antoniak, a uniformed Kansas City police officer, was working off duty on February 15, 2002, as a security officer for Crowd Systems, Inc. On that date, while working for Crowd Systems, Inc., Antoniak arrested Sherf and, after Sherf was in custody, Antoniak assaulted Sherf. Crowd Systems, Inc. provided Antoniak with a defense and the case proceeded to trial. The federal district court found that Antoniak ceased acting on behalf of Crowd Systems, Inc. once he placed Sherf under arrest and because the assault occurred after the arrest, Antoniak was acting as a police officer when the assault occurred. Therefore, the federal court dismissed Crowd Systems, Inc. as a defendant from the case.[1] The Kansas City Missouri Board of Police Commissioners ("Police Board") was never made a party to the federal litigation.

The jury returned a verdict in favor of Sherf and against Antoniak in the amount of $7,278 on February 26, 2008. On August 14, 2008, Antoniak tendered a letter requesting defense pursuant to the State Legal Expense Fund ("the Fund") by the

1. It is unclear from the stipulated facts if this dismissal occurred prior, during or subsequent to the trial.

Police Board. On September 4, 2008, Antoniak tendered a letter to the Attorney General requesting defense from that office pursuant to the Fund. That request was denied by the Attorney General on September 24, 2008. At the time of these notices, the federal action was not concluded because Sherf's motion for attorney fees was still pending before the federal court. On March 17, 2009, the federal court entered judgment in favor of Sherf in the amount of $188,618.90 for statutorily authorized attorneys' fees and expenses in addition to the damages found by the jury.

On August 25, 2009, Sherf made a written demand to the State of Missouri for payment from the Fund of the federal court's final Judgment. That request was denied on October 5, 2009.

Sherf then filed a Petition for a Declaratory Judgment in the Circuit Court of Cole County asking the court to declare and command that the sums owed to Sherf by Antoniak pursuant to the final judgment be paid from the Fund. The circuit court granted the Fund's Motion for Summary Judgment and Sherf now appeals.

## Standard of Review

Our review of a grant of summary judgment is essentially *de novo*. *Betts–Lucas v. Hartmann*, 87 S.W.3d 310, 315 (Mo.App. W.D.2002) (citing *Younger v. Mo. Pub. Entity Risk Mgmt. Fund*, 957 S.W.2d 332, 335 (Mo.App. W.D.1997)). "To prevail on a motion for summary judgment, the movant must show that there is no dispute of material fact and that [he] is entitled to judgment as a matter of law." *Id.* (citing *Younger*, 957 S.W.2d at 335). Further, "[t]he right to summary judgment may be established by a defending party by demonstrating "facts that negate *any one* of the claimant's elements...." *Fetick v. Am.*

*Cyanamid Co.*, 38 S.W.3d 415, 418 (Mo. banc 2001) (quoting *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993) (emphasis in original)). Where, as here, the facts have been stipulated to, the question "is whether the trial court drew the proper legal conclusion from the facts." *Quaker Oats Co. v. Stanton*, 96 S.W.3d 133, 137 (Mo.App. W.D.2003) (quoting *Perry State Bank v. Farmers Alliance Mut. Ins. Co.*, 953 S.W.2d 155, 157 (Mo.App. W.D.1997)). When the trial court's order does not state the reasons for its grant of summary judgment, we presume that it is on the grounds specified in the movant's motion for summary judgment. *Harpagon MO, LLC v. Clay Cnty. Collector*, 335 S.W.3d 99, 102 (Mo.App. W.D.2011).

## Analysis

The State Legal Expense Fund ("the Fund") is a statutory creation that provides:

"payment of any claim, or any amount required by any final judgment against (1) the State, or any agency of the State (to the extent that the claim against the State is authorized pursuant to section 537.600, the sovereign immunity statute); and (2) against "any officer or employee of the State or any agency of the State,"" as provided and as limited in the statute.

*P.L.S. v. Koster*, 360 S.W.3d 805, 809 (Mo. App. W.D.2011). In 2005, the Missouri Supreme Court held that the St. Louis Board of Police Commissioners was an agency of the state under the Fund's statutory scheme [2] and, therefore, police officers who are under the authority of a state created police board in St. Louis, constitute employees of a state agency, and were

---

**2.** Sections 84.010–84.265 RSMo. All statutory citations are to RSMo 2000 as updated through the 2011 Cumulative Supplement, unless otherwise indicated.

therefore covered by the Fund. *See Smith v. State,* 152 S.W.3d 275, 277–78 (Mo. banc 2005). The Kansas City Board of Police Commissioners was established in an almost identical fashion to the St. Louis Board of Police Commissioners.[3] In response to the *Smith* decision, the State of Missouri amended the statutes governing the Fund. These amendments became effective on August 28, 2005.

Among the 2005 amendments to the Fund, the legislature created an exception to Fund coverage for employees of police boards, such as Antoniak. Section 105.726.3[4] was added at that time and states:

> Moneys in the state legal expense fund shall not be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against a board of police commissioners established under chapter 84, RSMo, including the commissioners, any police officer, notwithstanding sections 84.330 and 84.710, RSMo, or other provisions of law, other employees, agents, representative, or any other individual or entity acting or purporting to act on its or their behalf.

Section 105.726.3. This subsection provides further:

> Except that the commissioner of administration shall reimburse from the legal expense fund any board of police commissioners established under chapter 84, RSMo, for liability claims otherwise eligible for payment under section 105.711 paid by such boards on an equal share basis per claim up to a maximum of one million dollars per fiscal year.

*Id.* Section 105.726.4 instructs the Attorney General to defend claims against police boards and also empowers the Attor-

ney General to adopt rules governing proper procedures. Finally, section 105.726.5 was added which states:

> Claims tendered to the attorney general promptly after the claim was asserted as required by section 105.716 and prior to August 28, 2005, may be investigated, defended, negotiated, or compromised by the attorney general and full payments may be made from the state legal expense fund on behalf of the entities and individuals described in this section as a result of the holding in *Wayman Smith, III, et al. v. State of Missouri,* 152 S.W.3d 275.

Section 105.726.5.

■ Sherf's claims arose on February 15, 2002 and he filed his claims against Antoniak on April 18, 2003. He then dismissed and re-filed those claims on May 12, 2005 (all prior to August 28, 2005, the effective date of the amendments to the Fund's authorizing statutes). The jury verdict of liability against Antoniak was entered on February 26, 2008, after the effective date of the amendments to the statutes. On August 14, 2008 Antoniak first tendered a letter requesting defense to the Police Board and subsequently, on September 4, 2008, such a request was tendered to the Attorney General. Both requests for a defense occurred after the jury returned its verdict but before the hearing on Sherf's motion for attorney fees and expenses was taken up by the federal court and before the final judgment was entered. The Attorney General declined to defend Antoniak in the remaining proceeding concerning attorneys' fees and expenses or any post trial matters and refused to authorize the judgment against him to be paid from the Fund.

---

**3.** Sections 84.350–84.840.

**4.** All statutory citations are to RSMo 2000 as updated through the 2011 Cumulative Supplement, unless otherwise indicated.

Sherf claims that his judgment should be paid from the Fund because his claim arose and was filed prior to the 2005 amendments to the Fund, at which time, our Missouri Supreme Court had held, police officers employed by Police Board such as the one that employed him, were entitled to coverage by the Fund. *See Smith*, 152 S.W.3d 275, 277–78.

The Fund makes two distinct arguments as to why the judgment should not be paid from the Fund: (1) first, this case is governed by the 2005 amendments to the Fund's authorizing statutes and, therefore, Antoniak was not entitled to coverage by the Fund; and (2) even if Antoniak was entitled to coverage by the Fund under the pre–2005 statutory language, Sherf is not entitled to coverage by the Fund because Antoniak breached the requirements of notice and cooperation found in section 105.716.2.

 The determination of whether the Fund is applicable to Sherf's case is a matter of statutory interpretation.

> Interpreting a statute and determining whether it applies to a given set of facts are questions of law which this court reviews *de novo. Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 23 (Mo.App. E.D. 2005). We must give effect to the language of a statute as written and will not add words or requirements by implication where the statute is not ambiguous. *McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 402 (Mo. App. W.D.2004).

*State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 447 (Mo.App. W.D.2007).

The first issue that we address is the application of the 2005 amendments to the Fund's authorizing statutes on this cause of action. Substantive changes to a statute can only be applied prospectively, while procedural changes may be applied retrospectively under Article, 1 section 13 of the Missouri Constitution. *Missouri Real Estate Com'n v. Rayford*, 307 S.W.3d 686, 699 (Mo.App. W.D.2010).

It is clear that under the pre–2005 amendment to section 105.726.3 that Antoniak, as an employee of the Police Board, was entitled to coverage by the Fund. *Smith v. State*, 152 S.W.3d 275 (Mo.2005). To the extent that a 2005 amendment would eliminate Antoniak's claim from coverage by the Fund, the amendment is substantive and can only be applied prospectively. *Lawson v. Ford Motor Co.*, 217 S.W.3d 345, 350 (Mo.App. E.D.2007).

However, in the 2005 amendments, the Legislature did not eliminate coverage for employees of Police Boards who had claims pending. The amendments specifically addressed the question of what was to be procedurally done regarding claims that were filed prior to the 2005 amendments but had not yet been settled or come to a final judgment until after the amendments effective date. The Legislature provided that so long as the claims were promptly tendered to the Attorney General, prior to the date that the 2005 amendments went into effect, that the Fund would fully cover those claims. *See* section 105.726.5. Without such notice, the claims against employees of Police Boards would not be covered by the Fund.

The case before us is relatively simple. No claim was tendered to the Attorney General either promptly or prior to August 28, 2005. Antoniak did not tender his defense to the Attorney General until after a verdict was entered against him and over three years after the August 28, 2005 statutory deadline, although he plainly had the opportunity to tender his defense well before the deadline. His claim is barred by the procedural 2005 amendments regarding notice of a claim to the State.

Sherf makes a number of arguments that his claim should be governed by the pre–2005 amendments. First, he argues that "[t]he plain language of the statute unambiguously provides that *either* the existence of a 'claim' or a 'final judgment rendered by a court of competent jurisdiction' effectively triggers the application of § 105.711.2 and ensures that the SLEF [the Fund] shall be available to cover the claim." Sherf cites to the case of *Cates v. Webster* to support his position. *See Cates v. Webster*, 727 S.W.2d 901 (Mo. banc 1987)

In *Cates v. Webster*, the Missouri Supreme Court considered a claim against the Fund, in which the underlying events occurred prior to the statutory adoption of the Fund. *Id.* at 904. In that case, the State argued that the state employee was not entitled to protection of the Fund because affording the employee that protection would involve an unconstitutional retroactive application of state law in violation of the Missouri Constitution, art 1, sec. 13. *Id.* The Supreme Court rejected the State's position and found in favor of the employee. The Missouri Supreme court stated the following:

> Under § 105.711.2, moneys in the State Legal Expense Fund [the Fund] shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction. Because the subsection specifies the rendering of any final judgment as one of the alternative "act[s] or transaction[s]," [*State ex rel. St. Louis–San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409, 411 (Mo. banc 1974)] triggering an obligation to pay money on behalf of an employee, the protection provided the employee under the Fund *arises when the claim is made and extends to the time when a judgment might be rendered.* From this we must conclude the legislature broadly

intended to include those claims not yet reduced to final judgment.

*Id.* (emphasis added). It is important to note that the question before the court was not the question presented here but whether a judgment based on events that occurred prior to the adoption of the Fund's statutory scheme could be covered by the Fund. That is a categorically different question than the question we face today: whether the filing of a case in court triggers perpetual access to the Fund until the matter is resolved by the court. The State argues that Antoniak is not protected by the Fund because, even though a claim was filed against him prior to the amendment of the relevant statutory provisions in 2005, no claim was made to the Attorney General prior to the date specified in the statute.

Even assuming the pre–2005 statutory scheme for the Fund applies to this case, Sherf is still not entitled to the relief he requests. We agree with the state that Antoniak's failure to provide notice and cooperate with the Attorney General in his defense is fatal to Sherf's claim that he is entitled to recover from the Fund. Before the 2005 amendments to the Fund, in 1997, the Eastern District of this Court held that notice to the State was required before coverage by the Fund could be enforced.

> The [Fund] statute conditions payment from the fund on the employee's cooperation with the attorney general. § 105.716.2. Essential to any such cooperation is that the defense of a claim be tendered to the attorney general so the attorney general can control the defense and settlement of covered claims as the statute requires. *See* § 105.716.2.

*Vasic v. State*, 943 S.W.2d 757, 760 (Mo. App. E.D.1997). The failure of a defendant to tender defense to the Attorney General and cooperate with the Attorney

General in his defense prevents payment from the Fund. *Id.* at 761.

Sherf argues that section 105.716 does not require tender. Section 105.716 was not amended in 2005 and was in force prior to the 2005 amendments. Although the statute is not specific as to when and how tender must be made, the statute is clear that the Attorney General must be able to investigate and defend the claim. It specifically forbids payment of claims from the Fund where a defendant does not cooperate with the Attorney General in their defense. *See* 105.716.2. Sherf then continues to argue that Antoniak did tender his defense to the Attorney General on September 4, 2008 and the Attorney General declined the request to defend him. Sherf argues that, therefore, it is irrelevant at what point Antoniak tendered his defense because the Attorney General rejected it.

While Antoniak did tender his defense to the Attorney General, it was only after a jury trial, a finding of liability, and a jury verdict against him. At that point in the case, the Attorney General would have been precluded from performing his role of assuming control of the investigation and defense of the claim. Sherf points out that the jury trial resulted in an award of only $7,278. It was at this point that Antoniak tendered his defense to the Attorney General *before* the award of attorneys' fees and costs of $188,618.90 was entered. Sherf suggests that it was non-prejudicial and, therefore, inconsequential that tender of Antoniak's defense was not made prior to trial because the bulk of the judgment awarded to Sherf occurred after that denied tender of defense. Sherf cannot seriously claim that it is sufficient for purposes of Fund coverage that the Attorney General be able to argue the issues of costs and attorneys' fees after the defendant has al-ready lost his case and the attorney fees and costs have already been incurred.

The Point is denied.

## Conclusion

The Judgment of the Circuit Court, granting the State's Motion for Summary Judgment is hereby affirmed.